Affirmed in Part and Reversed and Remanded in Part and Opinion filed
October 4, 2005









Affirmed in Part and Reversed and Remanded in Part and
Opinion filed October 4, 2005.                              

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01027-CV

____________

 

THU THUY HUYNH, VALLEY MULTI-SPECIALTY SURGERY
CENTER AND 

UNITY OUTPATIENT SURGERY CENTER,
L.L.C., Appellants

 

V.

 

THUY DUONG NGUYEN,
HA DINH NGUYEN, LOAN T. DUONG, 

PHUONG
DUONG, KIM NGUYEN LUU, AND BLUE CROSS AND 

BLUE SHIELD OF ALABAMA, Appellees

 



 

On Appeal from the 125th
District Court

Harris County, Texas

Trial Court Cause No. 03-35573

 



 

O P I N I O N

This is an interlocutory appeal from the
trial court=s order denying the special appearances of
two nonresidents.  We affirm in part and
reverse and remand in part.








I.  Factual and
Procedural Background

Appellees, Thuy
Duong Nguyen (AThuy@), Ha Dinh Nguyen
(AHa@), Loan T. Duong (ALoan@), Phuong Duong (APhuong@), and Kim Nguyen
Luu (AKim@) (collectively, Athe Patients@), brought suit
against appellants, Johnny Huynh (AJohnny@), a Texas
resident, Thu Thuy Huynh (AThu@), a Texas
resident, and Valley Multi-Specialty Surgery Center (AValley@), a California
corporation.  The Patients allege that
Johnny, Thu, and Valley recruited them in Houston, Texas, to undergo allegedly
unnecessary and improperly billed medical procedures at Valley=s clinic in
California.  The Patients assert that
Johnny, Thu, and Valley conspired to defraud insurance companies for allegedly
unnecessary diagnostic tests and cosmetic surgeries that allegedly were
fraudulently coded and billed as necessary medical procedures covered by
insurance.

The Patients allege that Johnny and Thu,
acting as agents or employees of Valley, offered them cosmetic surgery at
prices substantially below the market rate. 
According to the Patients, while still in Texas, the Patients would pay
Johnny and Thu in cash for their cosmetic surgeries.  The Patients would fly to California, and
Johnny and Thu would meet them at the airport and transport them to Valley=s clinic.  At the clinic, the Patients were allegedly
induced by Johnny, Thu, and other representatives of Valley to undergo
unnecessary diagnostic tests.  The
Patients assert that, without their knowledge, their insurance companies were
billed or overbilled for these tests. 
The Patients also claim they were induced to sign various documents,
authorizations, and assignments of insurance benefits.  The Patients assert the doctors, surgeons,
and medical providers received payment from the Patients= insurance
companies through the assignment of benefits and then shared these allegedly
ill-gotten proceeds with Johnny, Thu, Valley, and other surgeons.  The Patients assert claims based on alleged
common law fraud, violations of the Texas Deceptive Trade Practices Act,
negligent misrepresentation, civil conspiracy, and tortious interference.








Thu and Valley filed special appearances contesting
personal jurisdiction.[1]  Blue Cross and Blue Shield of Alabama (ABlue Cross@), an Alabama
corporation which is Loan=s and Kim=s insurer, filed a
petition in intervention, naming Unity Outpatient Surgery Center, L.L.C. (AUnity@), a California
corporation, as a defendant.  Blue Cross
asserts that it was a victim of the foregoing alleged conspiracy and fraudulent
scheme.  According to Blue Cross, Johnny,
Thu, Valley, and Unity conspired to defraud consumers and health insurance companies.  Specifically, Blue Cross alleges that it was
improperly billed and has been required to pay over $140,000 for allegedly
unnecessary diagnostic tests performed on Loan and Kim and for operations from
doctors whom they never visited and whom they never authorized to perform any
medical operations on them.  In response
to Blue Cross=s petition in intervention, Unity filed a
special appearance contesting personal jurisdiction.

After a hearing,
the trial court denied the special appearances of Thu, Valley, and Unity.  In this interlocutory appeal, Valley and
Unity challenge the trial court=s jurisdictional
ruling.[2]

II.  Standard of Review








Whether Valley and Unity are subject to personal
jurisdiction in Texas is a question of law subject to de novo review.  See BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).  The
trial court did not issue any findings of fact or conclusions of law.  Therefore, all facts necessary to support the
trial court=s ruling and supported by the evidence are
implied in favor of the trial court=s decision.  Id. at 795.  Parties may challenge the legal and factual
sufficiency of these implied factual findings. 
Id.  In conducting a
no-evidence analysis, we review the evidence in the light most favorable to the
challenged finding and indulge every reasonable inference that would support
it.  See City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005).  We must
credit favorable evidence if a reasonable factfinder could and disregard
contrary evidence unless a reasonable factfinder could not.  See id. at 827.  We must determine whether the evidence at
trial would enable reasonable and fair-minded people to find the facts at
issue.  See id.  The factfinder is the sole judge of the
credibility of the witnesses and the weight of their testimony.  See id. at 819.  

When reviewing a challenge to the factual sufficiency of
the evidence, we examine the entire record, considering both the evidence in
favor of, and contrary to, the challenged finding.  Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986).  After considering and
weighing all the evidence, we set aside the fact finding only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986).  The
trier of fact is the sole judge of the credibility of the witnesses and the
weight to be given to their testimony.  GTE
Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  We may not
substitute our own judgment for that of the trier of fact, even if we would
reach a different answer on the evidence. 
Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.
1998).  The amount of evidence necessary
to affirm a judgment is far less than that necessary to reverse a
judgment.  GTE Mobilnet, 61 S.W.3d
at 616.

III.  Issues and Analysis

Valley and Unity each challenge the trial court=s implied findings
of specific and general jurisdiction and its denial of their special
appearances.  The Texas long-arm statute
governs Texas courts= exercise of jurisdiction over nonresident
defendants.  Tex. Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon
1997).  It allows courts to exercise
personal jurisdiction as far as the federal constitutional requirements of due
process will permit.  See BMC Software,
83 S.W.3d at 795.  Thus, we rely on
precedent from the United States Supreme Court and from other federal courts,
as well as Texas decisions, in determining whether a nonresident defendant has
shown that the exercise of personal jurisdiction violates federal due process
guarantees.  Id.








Personal jurisdiction over a nonresident defendant is
constitutional when two conditions are met: (1) the defendant has established
minimum contacts with the forum state, and (2) the exercise of personal
jurisdiction comports with traditional notions of fair play and substantial
justice.  Id.  A nonresident defendant that purposefully has
availed itself of the privileges and benefits of conducting business in Texas
has sufficient contacts to allow Texas courts to exercise personal jurisdiction
over the nonresident.  Id.  Although not determinative, foreseeability is
an important consideration in deciding whether the nonresident defendant
purposefully has established minimum contacts with Texas.  Id. 
The concept of foreseeability is implicit in the requirement that
there be a substantial connection between the defendants and Texas arising from
their conduct purposefully directed toward Texas.  See Guardian Royal Exch. Assur., Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991).  A defendant should not be subject to a Texas
court=s jurisdiction
based upon random, fortuitous, or attenuated contacts.  BMC Software, 83 S.W.3d at 795.

Specific jurisdiction exists when the claims in question
arise from or relate to the defendant=s purposeful
contacts with Texas.  Am. Type Culture
Collection Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002).  In conducting a specific-jurisdiction analysis,
we focus on the relationship among the defendants, Texas, and the
litigation.  See Guardian Royal,
815 S.W.2d at 228.  General jurisdiction,
however, implicates a more demanding minimum-contacts analysis, requiring a
showing that the defendants conducted substantial activities within the
forum.  CSR, Ltd. v. Link, 925
S.W.2d 591, 595 (Tex. 1996) (orig. proceeding). 
General jurisdiction exists when a defendant has Acontinuous and
systematic general business contacts@ with Texas so
that Texas courts may exercise personal jurisdiction over the defendant even if
the plaintiff=s claims did not arise from or relate to
the defendant=s activities purposefully directed to
Texas.  See Helicopteros Nacionales de
Colombia, S.A. v Hall, 466 U.S. 408, 414B16, 104 S. Ct.
1868, 1872B73, 80 L. Ed. 2d 404 (1984); Am. Type
Culture Collection, 83 S.W.3d at 809B10.








A.      Did Valley and Unity waive their
objections to jurisdiction?

As an initial matter, we must address the
Patients= and Blue Cross=s contentions that
both Valley and Unity waived their special appearances.  An objection to a Texas court=s exercise of
personal jurisdiction over a nonresident is asserted by a special appearance
under Rule 120a of the Texas Rules of Civil Procedure.  See Tex.
R. Civ. P. 120a.  A special
appearance must be made and determined on a sworn motion prior to any other
plea, pleading, or motion that seeks affirmative relief.  Tex.
R. Civ. P. 120a(1)B(2); see Dawson-Austin v. Austin,
968 S.W.2d 319, 323 (Tex. 1998).  Any
appearance before judgment that is not made in compliance with Rule 120a
constitutes a general appearance.  Tex. R. Civ. P. 120a(1).  When a party enters a general appearance, the
trial court can exercise personal jurisdiction over that party without
violating the party=s due process rights.  Kawasaki Steel Corp. v. Middleton, 699
S.W.2d 199, 201 (Tex. 1985).  

1.  Valley








The Patients and Blue Cross assert that Valley waived its
special appearance by filing numerous pleadings with the trial court before
filing its special appearance.  See Tex. R. Civ. P. 120a(2).  In response to the Patients= first amended
petition, Valley=s California counsel filed a pleading
entitled, AMotion to Dismiss Plaintiffs= First Amended
Petition.@ 
This was the first responsive pleading filed on behalf of Valley in this
case.  In this sworn motion, Valley
requested dismissal on the grounds that the court lacked personal jurisdiction
over it.  To support this plea for
dismissal, Valley asserted it had never conducted business in Texas and had
never committed any torts against the Patients in Texas.  Looking at the substance of the pleading, we
conclude that it is a special appearance because it seeks dismissal based on
lack of personal jurisdiction.  See
State Bar of Tex. v. Heard, 603 S.W.2d 829, 833 (Tex. 1980) (stating that
the substance of a pleading for relief should be considered to determine the
nature of the pleading, rather than considering merely the title or form given
to it); Houston Lighting & Power Co. v. Klein Indep. Sch. Dist., 739
S.W.2d 508, 514 (Tex. App.CHouston [14th
Dist.] 1987, writ denied) (stating that the substance of a pleading is
determined by the effect it will have on the proceeding if granted by the trial
court).  Because this was the first
pleading Valley filed and it was, in substance, a special appearance, we
conclude that Valley did not waive its special appearance in this manner.

The Patients and Blue Cross also allege that Valley made a
general appearance by seeking affirmative relief from the trial court by a
motion to quash Blue Cross=s notice of
deposition and motion for protective order. 
Valley filed this motion before the trial court ruled on its special
appearance.  Specifically, the Patients
and Blue Cross argue that Valley waived its special appearance by having a
motion for protection heard before the trial court determined Valley=s special appearance.  See Shapolsky v. Brewton, 56 S.W.3d
120, 139B40 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied) (holding that seeking affirmative relief from the
trial court by requesting a temporary restraining order and sanctions partially
unrelated to discovery constituted a waiver of a special appearance).[3]

The use of discovery processes does not constitute a waiver
of a special appearance.  Tex. R. Civ. P. 120a(1).  A nonresident defendant may file motions
related to jurisdictional discovery and seek the trial court=s ruling on
disputes that may affect the evidence presented at the special appearance
hearing without waiving its special appearance. 
See Exito Elec. Co., Ltd. v. Trejo, 142 S.W.3d 302, 307 (Tex.
2004).  A trial court=s resolution of
discovery matters related to the special appearance is not a general appearance
by the party contesting personal jurisdiction. 
Id.








In this case, Valley=s motion to quash
and motion for protective order was filed in response to Blue Cross=s notice of intention
to take the deposition of one of Valley=s corporate
representatives.  By this motion, Valley
sought to quash the deposition notice and sought a protective order against
Blue Cross on the grounds that three of the PatientsCLoan, Phuong, and
KimCeach executed
arbitration agreements with Valley. 
Valley argued that Blue Cross=s jurisdictional
discovery requests from Valley were an attempt to circumvent the arbitration
agreement.  Valley also argued that Blue
Cross was seeking substantive discovery under the guise of jurisdictional
discovery.  Valley=s motion to quash
and motion for protective order were related to jurisdictional discovery and
sought the trial court=s ruling on disputes that could have
affected the evidence presented at the special appearance hearing.  Therefore, we conclude that Valley did not
waive its special appearance by filing such a motion.  See id.

Accordingly, if the trial court found that Valley waived
its special appearance by filing a pleading entitled AMotion to Dismiss
Plaintiffs= First Amended Petition@ or by filing a
motion to quash and motion for protective order, then the trial court erred.

2.  Unity

Blue Cross asserts Unity waived its objection to the court=s exercise of
personal jurisdiction by making a general appearance before filing its special
appearance and by participating in Valley=s argument of its
motion for protection and motion to quash before the trial court heard and
determined Unity=s special appearance.  Blue Cross argues that because Unity=s attorney sought
affirmative relief on a discovery-related issue and participated in arguing the
motion for protection and motion to quash before Unity filed its special
appearance, it waived its special appearance. 








In response to
Blue Cross=s petition in intervention, which added
Unity as a defendant, Unity filed its special appearance.  One week before, Blue Cross deposed one of
the Patients, Loan.  Unity=s attorney was
present at that deposition on behalf of Thu and Unity.  While examining Loan during her deposition,
Unity=s attorney became
embroiled in a discovery dispute with the Patients= lawyer and Blue
Cross=s lawyer over a
line of questioning.  According to Blue
Cross, Unity=s attorney insisted that the trial court
resolve the dispute by telephone.  Blue
Cross argues that by seeking this relief from the trial court before filing its
special appearance, Unity entered a general appearance and therefore waived its
special appearance.

The plain language of Rule 120a(1) states that the taking
of depositions and the use of discovery processes do not constitute a waiver of
a special appearance.  Tex. R. Civ. P. 120a(1).  In addition, a nonresident defendant may seek
the trial court=s ruling on disputes that may affect the
evidence presented at the special appearance hearing without waiving its
special appearance.  Exito Elec.,
142 S.W.3d at 307.  Because Unity was
seeking relief from the trial court on a discovery-related issue that could
have affected the evidence presented at the special appearance hearing, we
conclude that Unity did not waive its special appearance by seeking such relief
from the trial court.  See id.

Blue Cross also alleges that Unity=s attorney
assisted in arguing Valley=s motion to quash
and motion for protective order.  Valley=s motions were
filed in April 2004, and were argued before the trial court in May 2004.  Unity filed its special appearance in June
2004.  Blue Cross argues that by
assisting in arguing these motions before filing its special appearance, Unity
entered a general appearance and therefore waived its special appearance.  Presuming without deciding that such
assistance could waive a special appearance, the record does not show whether
Unity=s attorney
rendered any such assistance.  The record
shows that Valley and Thu C not Unity C filed the motion
to quash and motion for protective order. 
Nothing in our record indicates that Unity=s attorney
participated in arguing these motions before the trial court.  Based on our review of the record, we
conclude Unity did not waive its special appearance in the manner alleged.








Accordingly, the
trial court erred to the extent it impliedly found that Unity waived its
special appearance by seeking relief from the trial court on a
discovery-related issue during Loan=s June 22, 2004
deposition.  The trial court also erred
to the extent it impliedly found that Unity waived its special appearance by
arguing Valley=s motion to quash and motion for
protective order because the record does not reflect that Unity=s attorney was
present at or participated in the hearing.

B.      Did the trial
court properly conclude that it could exercise personal jurisdiction over
Unity?

In two issues, Unity argues it is not subject to either
specific or general jurisdiction. 
Specifically, Unity asserts that the trial court erred by denying its
special appearance because (1) the Patients never filed a claim against Unity;
(2) Unity lacks the requisite minimum contacts to establish specific or general
jurisdiction; and (3) exercising jurisdiction over it would violate traditional
notions of fair play and substantial justice. 
Conversely, Blue Cross alleges that Unity=s activities were
purposefully directed at Texas, both as a corporate entity and through its
alleged agents or employees, Johnny and Thu.

Unity argues the trial court improperly denied its special
appearance because the Patients never sued Unity.  As explained above, Blue Cross intervened as
a party-plaintiff naming Unity as a defendant in its petition in
intervention.  Unity does not cite, and
we have not found, any authority to support the notion that the failure of the
plaintiffs to sue a party deprives a court of personal jurisdiction over claims
by an intervenor.  We reject this
proposition.

Unity also asserts that plaintiffs must specifically plead
in their petition the personal-jurisdiction grounds upon which they rely and
that, because the Patients have filed no petition against Unity, this pleading
requirement has not been satisfied. 
Unity relies on a case that indicates that plaintiffs must plead in
their petitions the specific basis of personal jurisdiction upon which they
rely.  See Temperature Sys., Inc. v.
Bill Pepper, Inc., 854 S.W.2d 669, 673B74 (Tex. App.CDallas 1993, no
writ).  To the extent this case holds
that such a pleading requirement exists, we respectfully disagree.  








There is no requirement that plaintiffs or other claimants
plead in their petition the theories or bases of personal jurisdiction upon
which they rely; rather, the only relevant pleading requirement flows from the
need to plead allegations sufficient to bring nonresident defendants within the
provisions of the long-arm statute. 
See Am. Type Culture Collection, 83 S.W.3d at 807 (stating
plaintiffs bear the initial burden of pleading allegations sufficient to bring
nonresident defendants within the provisions of the long-arm statute); Siskind
v. Villa Found. For Educ., Inc., 642 S.W.2d 434, 437B38 (Tex. 1982)
(indicating that plaintiffs must allege an act by nonresident defendants in
Texas in their petition to avoid a dismissal for lack of personal
jurisdiction).  This minimal pleading
requirement is satisfied by an allegation that the nonresident defendants are
doing business in Texas.[4]  See Perna v. Hogan, 162 S.W.3d 648,
652B53 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (indicating that pleading requirement can be satisfied by
alleging that defendant is doing business in Texas or that defendant has
committed any act in Texas); El Puerto De Liverpool, S.A. de C.V. v. Servi
Mundo Llantero S.A. de C.V., 82 S.W.3d 622, 629 (Tex. App.CCorpus Christi
2002, pet. dism=d w.o.j) (indicating that pleading
requirement can be satisfied by alleging that defendant is doing business in
Texas).  Because Blue Cross pleaded in
its petition in intervention that Unity conducted business in Texas and
committed torts in Texas, Blue Cross satisfied this pleading requirement.  

Furthermore, Unity
cites no case for its assertion that Blue Cross must rely upon the allegations
of the Patients= petition, in which no claims are asserted
against Unity, to satisfy the pleading requirement as to Blue Cross=s claims against
Unity in its petition in intervention. 
We disagree and base our ruling on the allegations of Blue Cross=s petition in
intervention.








Although the trial court did not expressly find that either
Thu or Johnny were Unity=s agents or employees, we presume the
trial court impliedly found all facts necessary to support the judgment if
supported by legally and factually sufficient evidence.  See Am. Type Culture Collection, 83
S.W.3d at 806.  Therefore, we construe
Unity=s argument that it
is not subject to specific jurisdiction in Texas as an attack on the legal and
factual sufficiency of the evidence to support the trial court=s implied findings
that Johnny and Thu were acting as 
agents or employees of Unity.  See
Walker Ins. Servs. v Bottle Rock Power Corp., 108 S.W.3d 538, 549 (Tex.
App.CHouston [14th
Dist.] 2003, no pet.). 

The Texas contacts of agents or employees are attributable
to their nonresident principals.  See
Alenia Spazio, S.p.A. v. Reid, 130 S.W.3d 201, 214 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).  On appeal,
Unity asserts that Thu was never its agent or employee.  At her deposition, Thu testified as follows:

!       She worked for AUnity@ and understood she was an employee
of AUnity.@

!       AUnity@ paid her a salary to recruit
patients from Houston, Texas. 

!       AUnity@ reimbursed her for advertising
costs related to these recruiting efforts. 


At
the end of her deposition, Thu testified that she had never heard of Unity
Outpatient Surgery Center, L.L.C. and that Unity Outpatient Surgery Center,
Inc. paid her.  Despite this testimony,
the trial court, as finder of fact, could have credited her former testimony
and concluded that the AUnity@ that Thu referred
to was Unity Outpatient Surgery Center, L.L.C. 
On appeal, Unity does not address whether Johnny was acting as Unity=s agent or
employee.  After reviewing the evidence
in the record under the applicable standards of review, we conclude that the
evidence is legally and factually sufficient to support the trial court=s implied findings
(1) that both Thu and Johnny were acting as Unity=s agents or
employees when they solicited the Patients in Texas, and (2) that Blue Cross=s claims against
Unity arise from or relate to Unity=s purposeful
contacts with Texas.  Accordingly, we
overrule Unity=s first issue.[5]








In addition to sufficient minimum contacts with Texas,
federal due process requires that the exercise of personal jurisdiction comport
with traditional notions of fair play and substantial justice.  See Guardian Royal, 815 S.W.2d at
228.  In deciding this issue, the court
should consider the following factors:

!       the burden of
the defendant;

!       the interests
of the forum state in adjudicating the dispute;

!       the plaintiffs= interests in obtaining convenient
and effective relief;

!       the interstate
judicial system=s interest in obtaining the most
efficient resolution of controversies; and

!       the shared
interest of the several states in furthering fundamental substantive social
policies.

Id.

Unity asserts several reasons that it claims a Texas court=s assertion of
jurisdiction over it would offend traditional notions of fair play and
substantial justice and would be inconsistent with due process
requirements.  First, it asserts that
defending itself in Texas is unduly burdensome because Unity is a California
corporation without any minimum contacts with Texas.  Second, it claims Texas has little interest
in adjudicating the dispute because the transaction at issue in this case is
directed at California, not Texas.  Unity
concedes that Texas may have an interest in providing a forum for the Patients
to obtain redress for the alleged wrongs by Unity, but it argues that this
interest is considerably lessened in this case because Blue Cross is an Alabama
corporation and cannot prove that Unity has done any harm to it in Texas.  Unity argues that Blue Cross asserts claims
due to alleged actions in California, not Texas.  Under these circumstances, Unity contends, it
would be unfair for a Texas court to exercise personal jurisdiction over it.








Only in rare cases will the exercise of personal
jurisdiction not comport with fair play and substantial justice when the
nonresident defendant has purposefully established minimum contacts with the
forum state. Guardian Royal, 815 S.W.2d at 231. Unity must present a
compelling case that the presence of some other considerations would render the
exercise of personal jurisdiction unreasonable. See id.  Despite this burden of
negating all bases of personal jurisdiction, Unity did not propound any
evidence regarding the factors we consider in determining whether the exercise
of personal jurisdiction comports with fair play and substantial justice,
including the burden on Unity of litigating in Texas.  Unity has not made a compelling case that it
would be unreasonable for the court to exercise personal jurisdiction in this
case.  Distance alone is usually
insufficient to defeat personal jurisdiction because modern transportation and
communication have made it less burdensome to defend lawsuits in a state in which
the defendant engages in economic activity. 
See id.  After carefully
considering all of the relevant factors, we hold the exercise of personal
jurisdiction over Unity in this case comports with traditional
notions of fair play and substantial justice. 
See Intercarga, S.A. v. Fritz Companies, Inc., No.
14-02-00297-CV, 2003 WL 21402583, at *9 (Tex. App.CHouston [14th
Dist.] June 19, 2003, no pet.) (holding that the exercise of personal
jurisdiction would comport with fair play and substantial justice).  Accordingly, we overrule Unity=s second issue.

C.      Did the trial
court properly conclude that it could exercise personal jurisdiction over
Valley?

In its sole issue on appeal, Valley asserts that a Texas
court cannot assert personal jurisdiction over it consistent with
constitutional due process because (1) Valley does not have sufficient minimum
contacts with Texas and (2) a substantial connection does not exist between
Valley and Texas that came about from actions purposefully directed towards
Texas.  The Patients and Blue Cross
assert that Valley=s activities, both as a corporate entity
and through its alleged agents or employees, Johnny and Thu, were purposefully
directed at Texas and are adequate to support implied findings of both specific
and general jurisdiction.[6]








                1.  Thu and Johnny as Valley=s Alleged Agents
or Employees

The Texas contacts of agents or employees are attributable
to their nonresident principals.  See
Alenia Spazio, S.p.A., 130 S.W.3d at 214. Although the trial court did not
expressly find that either Thu or Johnny were Valley=s agents or
employees, we presume the trial court impliedly found all facts necessary to
support the judgment if supported by legally and factually sufficient
evidence.  Am. Type Culture Collection,
83 S.W.3d at 806.  Valley asserts that
there is no evidence to support the trial court=s implied findings
that Johnny and Thu were acting as agents or employees of Valley.  The affidavit of Wendy Schneider proved that
Thu and Johnny were not employees or agents of Valley.  Furthermore, at her  deposition, Thu testified that she never
worked for Valley, that she never received any money from Valley, that she did
not have any direct contact with anyone at Valley, and that the only contact
she had regarding her marketing business in California was with someone from
Unity.  

On appeal, the Patients and Blue Cross point to the
following deposition testimony:

!       Kim testified
that she understood that Thu was working for Valley, based on Kim=s observation of Thu talking to
staff at the Valley center.

!       Kim testified
that Thu told her she worked for Valley.

!       Loan testified
that Thu told her that she was working for Valley and being paid by
Valley.  

!       Loan testified
that, at the Valley center, Thu knocked on the door, and someone opened the
door for Thu to go Ain the back.@

!       Loan testified
that she thought that Thu acted like she worked at the Valley center because
Thu walked back and forth comfortably and freely.  

!       Loan testified
that Thu did not fill out Loan=s paperwork but guided Loan in filling out her
paperwork.  

!       Phuong
testified that Thu told Phuong that Thu was working for Valley but that Thu did
not tell Phuong that she was being paid by Valley.








!       Phuong
testified that Thu went into the back part of the Valley center where other AValley people@ were working and that Phuong saw
Thu preparing paperwork with someone else from the clinic.  

!       Phuong
testified that Thu filled out Phuong=s paperwork for her.

!       Phuong believed
that Thu was working for Valley because Thu acted so naturally and at ease and
because she prepared paperwork.

!       Phuong
testified that no one other than Thu told her that Thu worked for Valley.  

The law does not presume agency. Suarez v. Jordan,
35 S.W.3d 268, 272B73 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  Absent actual or
apparent authority, an agent cannot bind a principal.  Id. 
Both actual and apparent authority are created through conduct of the
principal communicated either to the agent (actual authority) or to a third
party (apparent authority).  Id.  Actual authority denotes authority that the
principal intentionally confers upon the agent, or intentionally allows the
agent to believe he has, or by want of ordinary care allows the agent to
believe himself to possess.   Id.  In determining whether apparent authority
exists, we look to the acts of the principal and ascertain whether those acts
would lead a reasonably prudent person using diligence and discretion to
suppose the agent had the authority to act on behalf of the principal.   Id. 
Only the conduct of the principal may be considered; representations
made by the agent of his authority have no effect.  Id. 
Furthermore, the principal either must have affirmatively held the agent
out as possessing the authority or the principal must have knowingly and
voluntarily permitted the agent to act in an unauthorized manner.    Id.








After reviewing the evidence properly before the trial
court under the applicable legal standard, we conclude that Valley conclusively
proved, as a matter of law, that Thu and Johnny were not agents or employees of
Valley.  See id.  Most of the evidence upon which the Patients
and Blue Cross rely to show agency relates to alleged statements by Thu, which
are insufficient as a matter of law.  Id.  There is no evidence of acts by Valley that
would lead a reasonably prudent person using diligence and discretion to
suppose Thu had the authority to act on behalf of Valley.  There is no evidence that Valley
affirmatively held Thu out as possessing this authority or that Valley
knowingly and voluntarily permitted Thu to act in an unauthorized manner.  Therefore, we cannot count the contacts of
Thu and Johnny with Texas as being contacts of Valley for jurisdictional
purposes.

                                             2.
General Jurisdiction

The Patients and Blue Cross assert that the trial court may
exercise personal jurisdiction over Valley under a general jurisdiction
analysis based on the following contacts: 
(1) the contacts of Valley=s alleged agent or
employee Thu with Texas, (2) Valley=s advertising in
Texas, (3) the attendance of Valley employees at meetings in Dallas three years
ago, (4) possible trips by Valley=s financial
director (Wendy Schneider) to Texas with Valley=s founder and
principal, Dr. Gene Zdenek more than five times, (5) Valley=s treatment of
more than thirty-five Texas residents at Valley=s facility in the
past five years, and (6) Valley=s sending of
eighteen claims to insurance carriers in Texas over the past five years.








As stated above, we cannot count the contacts of Thu with
Texas as being contacts of Valley.  As to
advertising, the evidence conclusively proves as a matter of law that Valley
did not conduct any advertising in Texas.[7]  Schneider testified that the possible five
trips to Texas with Dr. Zdenek were on behalf of the Zdenek Eye Institute, not
Valley.  Reviewing the record evidence
under the applicable standard of review, we conclude that the evidence
conclusively proves as a matter of law that the nature and quality of Valley=s contacts with  this state do not rise to the level of
continuous and systematic general business contacts with Texas.[8]  See Helicopteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873, 80 L.Ed.2d 404
(1984);  Alenia Spazio, S.p.A.,
130 S.W.3d at 216B20. Therefore, the trial court erred to
the extent it impliedly determined it could exercise personal jurisdiction over
Valley based on general jurisdiction.

                                             3.
Specific Jurisdiction

In support of its special appearance, Valley filed the
affidavit of Wendy Schneider, Valley=s financial
director, copies of services agreements between Valley and various surgical
entities, and an excerpt from Thu=s oral
deposition.  In her affidavit, Schneider
testifies as follows:

!       Dr. Zdenek, a
California ophthalmologist, is the founder and sole owner of Valley, a
corporation formed and incorporated under California law. 

!       Since 1991,
Valley has been the owner of a surgery center located in Reseda, California.

!       Although Dr.
Zdenek has performed many surgeries at the surgery center, Valley has rented
the center out for use by other doctors.

!       Valley is not
incorporated in Texas and has no subsidiaries incorporated in Texas.  

!       Valley
maintains no office or any other type of facilities in Texas and has no
officers, directors, or employees who live in Texas.  

!       No Valley
employees have ever traveled to Texas in their capacities as Valley employees. 

!       At no time has
Valley contracted with any persons residing or operating in Texas to act on its
behalf with respect to marketing to or service of any of Valley=s patients. 

!       Valley does not
have a telephone listing in Texas.

!       Valley does not
have any bank accounts in Texas.

!       Valley owns no
real or personal property in Texas, and Valley has never sold, purchased, or
leased property in Texas. 

!       Valley has
never advertised in Texas, nor has it directed any advertising activities to
any Texas residents.  








!       Valley has never
made any purchases in Texas, applied for a loan in Texas, attended any trade
shows or conventions in Texas, or had any business meeting in Texas.  

!       Valley has
never sued or been sued in Texas (except for this suit). 

!       Limited contact
information about Valley is maintained on a passive website dedicated to the
Zdenek Eye Institute.

!       Valley served
as a landlord to A-MED, Inc., St. John Medical Group, and Antioch Management,
Inc. (hereinafter the ACompanies@) and leased its facilities to
these entities under the terms of the services agreements attached to Schneider=s affidavit.

!       Upon
information and belief, the Companies are all related to Unity.

!       Valley did not
initiate the contact with the Companies; rather, the Companies initially
contacted Valley.

!       Valley had no
involvement in the process by which the Companies= patients initially sought medical
treatment for their physical ailments.

!       Valley had no
involvement in the diagnosis of the Companies= patients.

!       Valley had no
involvement in any solicitation of the Companies= patients.

!       Valley had no
involvement in the arrangements by which the Companies= patients were brought to Valley
for medical treatment.

!       Valley had no
involvement in any of the Companies= patients= decisions to have medical procedures performed.

!       Valley had no
involvement in the selection of doctors who initially treated or diagnosed the
Companies= patients.

!       Valley had no
involvement in the selection of the doctors who performed the surgeries or
other medical procedures on behalf of the Companies= patients.

!       Valley had no
involvement in the determination of the medical necessity of the medical
procedures that were performed on the Companies= patients.

!       Doctors
arranged and paid by the Companies, not Valley, performed all of the medical
procedures and surgeries.

!       Valley=s personnel had no involvement in
any attempt to collect the bills generated by the Companies.








!       Valley never
employed Johnny and never stated or represented to any person or organization
that Johnny was an employee or agent of Valley.

!       Valley never
employed Thu and never stated or represented to any person or organization that
Thu was an employee or agent of Valley.

!       Valley never
employed the Companies and never stated or represented to any person or
organization that the Companies were agents of Valley.

!       Valley did not employ an employee who can
speak Vietnamese at any time from the year 2002 to today.

Valley also introduced into evidence various services
agreements between Valley and each of the Companies.  Valley=s agreement with
A-MED, Inc. states in part:

After each procedure is completed,
A-MED shall deliver to [Valley] appropriate documentation (including notice of
assignments for medical service providers, identification numbers, and a copy
of any applicable lien) and a statement and/or invoice, as needed, to submit
billing documents to the responsible payor, which will then be transmitted to
the appropriate payor under [Valley=s] name and appropriate identification number.

. . . [Valley] agrees to pay A-MED within ten business days
of [Valley=s] receipt of funds from the payor, 98% of
such gross receipts received, the remaining 2% of gross receipts to be retained
by [Valley], in addition to any other sums due and payable to [Valley],
pursuant to the terms of this Agreement.

Valley=s services
agreements with St. John Medical Group, and Antioch Management, Inc. contain
substantially similar language, except that Valley=s portion of the
gross receipts is ten percent rather than two percent.

Valley also introduced a declaration stating that Thuy and
Ha did not have their medical procedures performed at Valley=s surgical
center.  Medical records supporting this
testimony indicate that Thuy and Ha had their medical procedures performed at a
Unity surgical center in Buena Park, California, rather than at Valley=s surgical center
in Reseda, California.  In their
deposition testimony, Thuy and Ha confirm that their procedures were performed
at a Unity outpatient center, as opposed to Valley=s surgical
center.  








The evidence conclusively proves as a matter of law that
procedures performed on Thuy and Ha did not occur in Valley=s surgical
facility.  After reviewing the evidence
in the record under the applicable standard of review, we conclude that the
evidence conclusively proves as a matter of law that the claims of Thuy and Ha
against Valley do not arise from or relate to the Valley=s purposeful
contacts with Texas. See Alenia Spazio, S.p.A., 130 S.W.3d at 210B16.

As to the claims of Loan, Phuong, and Kim, and the claims
of Blue Cross that are based on treatment of its insureds Loan and Kim, the
analysis is different.  The evidence
shows that Loan, Phuong, and Kim received the medical treatments in question at
Valley=s surgical
facility.  Much of Schneider=s affidavit in
support of Valley=s special appearance is based on Valley=s services
agreements with the Companies, and many of Schneider=s jurisdictional
denials are stated in terms of the Companies and the Companies= patients.  There is no evidence in our record, however,
that Loan, Phuong or Kim received their medical treatment as patients of any of
the Companies.  There is no evidence in the
record that any of the Companies recruited Loan, Phuong, or Kim to have their
medical procedures performed at Valley=s surgical center
or that Thu or Johnny were acting on behalf of any of the Companies when they
allegedly recruited Loan, Phuong, and Kim. 
The terms of the services agreements between Valley and the respective
Companies require the Companies to give Valley documentation that would show
all of the patients treated at Valley=s facility under
these services agreements.  Nonetheless,
neither Schneider nor any witness on behalf of Valley has testified that any of
the Patients were treated under one or more of these agreements.  There is no evidence in the record that the
terms of the services agreements between Valley and the Companies apply to
Loan, Phuong, or Kim.








Furthermore, in their petition, Loan, Phuong, and Kim
allege that their insurance companies mistakenly sent them payments for
diagnostic tests that Valley allegedly fraudulently billed to their
insurers.  Loan, Phuong, and Kim allege
that their insurers mistakenly sent them payments for these allegedly
fraudulent diagnostic tests.  In her
deposition, Loan testified that her insurance company sent her a check for Atoo much money@ that she
suspected was related to insurance fraud. 
After she received this check, Loan testified she received approximately
ten phone calls from people who identified themselves as representatives of
Valley, demanding payment.  Likewise,
Phuong testified at her deposition that she received letters and phone calls
from Valley seeking payment for her procedures. 
Schneider asserts in her affidavit that Valley=s personnel had no
involvement in any attempt to collect the bills generated by the Companies;
however, as mentioned above, there is no evidence that the bills relating to
Loan, Phuong, or Kim were generated by the Companies. Valley did not provide
the trial court with evidence as to its relationship to the persons and
entities involved in the medical treatment in question of  Loan, Phuong, and Kim at Valley=s surgical center
or as to Valley=s role, if any, in seeking to collect
funds in Texas that Loan, Phuong, Kim, and Blue Cross allege were the result of
insurance fraud by Valley and others.  

After reviewing the evidence in the record under the
applicable standard of review, we conclude that the trial court did not err in
impliedly finding Valley failed to meet its burden of proving that the claims
of Loan, Phuong, Kim, and Blue Cross against Valley do not arise from or relate
to Valley=s purposeful contacts with Texas.[9]
See BMC Software, 83 S.W.3d at 793 (stating that party asserting special
appearance has burden of negating all bases of jurisdiction); Alenia Spazio,
S.p.A., 130 S.W.3d at 210B16. 








Accordingly, we sustain Valley=s sole issue on
appeal to the extent that Valley asserts the trial court erred in denying its
special appearance as to the claims asserted by Thuy and Ha; otherwise, we
overrule Valley=s issue. 
We reverse the trial court=s order to the
extent it denied Valley=s special appearance as to all the claims
asserted by Thuy and Ha against Valley, and we remand to the trial court with
instructions to dismiss these claims for lack of personal jurisdiction.  Otherwise, we affirm the trial court=s order.

V.  Conclusion

Neither Valley nor Unity waived its special
appearance.  The evidence before the
trial court is legally and factually sufficient to support the trial court=s implied findings
regarding the assertion of personal jurisdiction over Unity.  Therefore, the trial court did not err in
denying Unity=s special appearance.  Accordingly, we overrule Unity=s two issues on
appeal and affirm the trial court=s order denying
Unity=s special
appearance. We reverse the trial court=s order to the
extent it denied Valley=s special appearance as to the claims
asserted by Thuy and Ha against Valley, and we remand to the trial court with
instructions to dismiss these claims for lack of personal jurisdiction.  We affirm the remainder of the trial court=s order.

 

 

 

 

/s/      Kem Thompson
Frost

Justice

 

Judgment rendered and Opinion filed
October 4, 2005.

Panel consists of Chief Justice Hedges and
Justices Fowler and Frost.

 

 











[1]  Though served with process in this case,
Johnny, who is allegedly Thu=s
younger brother, has never appeared in this case.

 





[2]  Even though
she filed a notice of appeal, Thu has not filed an appellate brief and
therefore is not challenging the trial court=s
denial of her special appearance.





[3]  The Texas
Supreme Court recently disapproved of the Shapolsky case on other
grounds.  See Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777, 789 n.63 (Tex. 2005).





[4]  At least one
court of appeals has gone so far as to hold that the plaintiffs= failure to allege in the petition that the defendants
are doing business in Texas or committed an act in Texas still does not entitle
a nonresident to dismissal for lack of personal jurisdiction if the plaintiffs
make such an allegation in their response in opposition to the special
appearance.  See Perna v. Taylor,
146 S.W.3d 791, 796B97 (Tex. App.CBeaumont
2004, no pet.); but see Perna, 162 S.W.3d 648, 652B53.  





[5]  Having
concluded that the trial court did not err in denying Unity=s special appearance because Unity is subject to
specific jurisdiction in Texas, we need not address Unity=s contention that it is not subject to general
jurisdiction.





[6]  In their
petition, the Patients allege that Valley is doing business in Texas, thus
satisfying the pleading requirement regarding nonresident defendants.  See, e.g., El Puerto de Liverpool,
S.A. de C.V., 82 S.W.3d at 629. 
Valley had the burden to negate all bases of personal jurisdiction.  See BMC Software, 83 S.W.3d at
793.  





[7]  There is
evidence in the record that Unity and Thu advertised in various Vietnamese
publications in the Houston area, but these are not contacts of Valley.

 





[8]  Valley asserts
on appeal that this court should use the Aout-of-state@ doctor personal-jurisdiction analysis that this court
used in Brocail v. Anderson, 132 S.W.3d 552, 559B64 (Tex. App.CHouston [14th Dist.]
2004, pet. denied).  We decline to do so
because we conclude that this analysis is limited to certain
personal-jurisdiction issues regarding medical-malpractice claims against
out-of-state doctors.  The claims at
issue in the present case are not medical-malpractice claims.





[9]  We note that
Valley does not argue on appeal that the trial court=s exercise of personal jurisdiction over it would
offend traditional notions of fair play and substantial justice, so we need not
address this issue.