Agostino **PERNA** and Mobile Medical Training Unit, L.L.C., Appellants,

v.

Cathy **TAYLOR**, Individually and as Representative of the Estate of Dorothy Hebert, et al., Appellees,

and

Agostino **Perna** and Mobile Medical Training Unit, L.L.C., Appellants,

v.

Tim **Kennedy**, Individually and as Representative of the Estate of Edna Mae Kennedy, et al., Appellees.

Nos. 09–03–518 CV, 09–03–519 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 2, 2004.

Decided Oct. 7, 2004.

George Vie III, Mills Shirley, Galveston, for appellants.

David George, Sandra T. Krider, Edwards & George, Houston, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

■ This appeal from the denial of a special appearance concerns two cases subject to a pre-trial multidistrict litigation order.[1] In trial court cause No. E–168,256 (Appeal No. 09–03–518 CV), which is filed in the 172nd District Court, the plaintiffs are Cathy Taylor, Individually and as Representative of the Estate of Dorothy Hebert, Roger Hebert and Jim Hebert; Elvia Sykes, Individually and as Representative of the Estate of Peter Gordon Sykes; James Saylor, Individually and Representative of the Estate of Pauline Emily Saylor; Barbara Barker, Individually and Representative of the Estate of Larry Barnes; Tricia Deland, Individually and Representative of the Estate of John T. Gardner; and Dale Soderman, Individually and Representative of the Estate of Alfred Soderman. In trial court cause No. D–168,353 (Appeal No. 09–03–519 CV), which is filed in the 136th District Court, the plaintiffs are Tim Kennedy, Individually and as Representative of the Estate of Edna Mae Kennedy; Matthew Langianese, Individually and as Representative of the Estate of Norma Langianese, Joette Langianese, Michelle Langianese; Debbie Zambardino, Individually and as Representative of the Estate of Obie Ray Duncan, Dustin Duncan; Catherine Lee, Individually and as Representative of the Estate of Peter G. Lee; and Jack W. Pryor, Jr., Individually and as Representative of the Estate of Barbara Ann Hunt. In both cases, the plaintiffs assert claims of negligence, negligence *per se*, gross negligence, constructive fraud, and intentional infliction of emotional distress against appellants Agostino Perna ("Perna") and Mobile Medical Training Unit, L.L.C., ("Mobile Medical") who are among eighteen defendants sued in connection with the mishandling of corpses donated through the Willed Body Program administered by The University of Texas Medical Branch at Galveston ("UTMB"). Perna and Mobile Medical filed a special appearance. After conducting a hearing in which all evidence was submitted by affidavit and no testimony was taken, the pretrial judge overruled the special appearances in a letter addressed to the parties in eight of the MDL cases. Perna and Mobile Medical raise six issues in the appeals of the two Jefferson County cases.

■ First, we must establish our jurisdiction to hear the appeals. A person may appeal from an interlocutory order of a district court that grants or denies a special appearance under Rule 120a, Texas Rules of Civil Procedure. *See* Act of May 27, 1997, 75th Leg., R.S., ch. 1296, § 1, 1997 Tex. Gen. Laws 4936, 4937 (amended 2001, 2003) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(7) (Vernon Supp.2004)). The time limits for perfecting an accelerated appeal run from the date the order is signed. Tex.R.App. P. 26.1(b). "When there is a time limit within which the court has jurisdiction to act, the order must be in writing, specific, and signed by the trial judge." *Walker v. Harrison,* 597 S.W.2d 913, 915 (Tex.1980). Our threshold question is whether the pretrial judge's letter is an order contemplated by Section 51.014. In *Dunn v. County of Dallas,* 794 S.W.2d 560, 562–63 (Tex. App.-Dallas 1990, no writ), the question of whether an order may be in the form of a letter arose in the context of the trial

---

1. The pretrial judge was appointed prior to the effective date of the current version of Rules of Judicial Administration 11, the multidistrict litigation ("MDL") rule. *See* Tex.R. Jud. Admin. 11, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (Vernon 1998) (amended by Supreme Court order, Misc. Docket No. 03–9145, effective Aug. 31, 2003).

court's authority to act in a case. The Dallas Court of Appeals held that a letter to the administrative judge conveying the trial judge's decision to recuse was a clear and unequivocal act of the court that functioned as an order of recusal and was valid and effective at the time it was signed. *Id.* at 562. Here, the pretrial judge identified the styles of the eight cases involved, communicated her ruling to the lawyers for the parties involved, and personally signed the letter. Here, as in *Dunn*, the letter is an unequivocal act of the judge assigned to the case, and there is no indication in the record that the judge intended to sign a formal order. We conclude the letter is an order for purposes of appeal under Section 51.014.[2]

■ A Texas court may assert personal jurisdiction over nonresident defendants only if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent with federal and state due process standards. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). The long-arm statute permits the assertion of jurisdiction over nonresidents "doing business" in Texas, which by statutory definition includes: (1) those defendants who contract with a Texas resident, if either party is to perform in whole or in part in this state; (2) those defendants who commit torts in whole or in part in this state; and (3) those defendants who recruit Texas residents for employment. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997). The plaintiffs have the burden to plead a *prima facie* showing of jurisdiction. *BMC Software Belgium,*

*N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). If the plaintiffs' allegations are sufficient to bring the nonresident defendants within the provisions of the long-arm statute, the defendants challenging the court's jurisdiction must negate all jurisdictional bases. *Id.* Where, as here, the trial court issues findings of fact and conclusions of law, the nonresident defendants may challenge the legal and factual sufficiency of the findings of fact. *Id.* at 794. We review *de novo* the trial court's legal conclusions drawn from the facts. *Id.*

■ The families' petitions allege that all of the defendants were negligent in their handling of willed bodies and cremated remains, transferred bodies out of the state without authorization or for profit, and failed to return ashes to designated family members. They further allege that all of the defendants violated a statutory duty to treat the willed bodies and cremated remains with respect and dignity. Perna and Mobile Medical were among the defendants alleged to have intentionally inflicted emotional distress upon the plaintiffs in failing to handle the willed bodies with respect and dignity, to abide by applicable laws and regulations, to keep required records, or to return donors' ashes. In their first two issues, the appellants contend that the pleadings do not adequately allege long-arm jurisdiction over them. The plaintiffs bear the initial burden of pleading sufficient allegations to bring the nonresident defendants within the provisions of the Texas long-arm statute. *Blair Communications, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723,

---

2. Issuing an appealable interlocutory order in correspondence seems to us to be an exceedingly bad practice, especially in the context of multidistrict litigation where many parties are involved. As *Dunn* observed, "problems arise because of the failure to follow the venerable practice of preparing a formal document to be signed by the judge and properly recorded in the minutes of the trial court." *Id.* at 562. Counsel could easily assume that the letter served to inform the parties of the ruling and that a written order would be signed on a later date, with disastrous consequences.

726 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The appellees' trial pleadings, though extensive, do not specifically allege that Perna and Mobile Medical were doing business in Texas. In the case cited by the appellants, *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982), the court held that evidence in the special appearance hearing that the defendants were non-residents was sufficient to meet their burden, in light of the plaintiffs' failure to allege any act in Texas by the individuals in question. Here, the Taylor and Kennedy plaintiffs did supply jurisdictional allegations in their response to the special appearances. Therefore, we overrule issue two and turn to the evidence adduced at the special appearance hearing.

In their third and fourth issues, the appellants challenge the legal and factual sufficiency of the evidence to support the findings of fact filed by the pretrial judge. The evidence submitted by the appellants in support of their special appearances consists of an affidavit by Perna in his individual capacity, another affidavit from Perna in his capacity as an officer of Mobile Medical, and eleven pages of testimony from Perna's 273–page deposition. Perna swears that he is a resident of New Jersey, that Mobile Medical is a New Jersey limited liability company, that he does not individually take custody of human torsos nor does he arrange for their shipment or disposition in his individual capacity. He admits that UTMB supplied human torsos for medical seminars in states other than Texas, but that another company, IMET, arranged for the leasing of human torsos for medical training seminars and Mobile Medical takes temporary custody of torsos during a medical seminar. He admitted that he came to Houston, Texas, on two occasions when IMET conducted medical seminars at Baylor Medical School, and he came to Dallas, Texas, once, on behalf of IMET, to find out how much

advance time the medical school would need in order to furnish a torso for a seminar. None of the torsos used at the two seminars conducted in Houston correspond to any of the identification numbers which correspond to numbers that relate to the appellees' decedents. He admitted that the number assigned to the corpse of Edna Mae Kennedy was furnished to a seminar involving one of four companies, including Mobile Medical. The paperwork from UTMB always dictated that the ashes be cremated and disposed of according to the laws of the state where the seminar was conducted. Allen Tyler was paid an honorarium by another company, SBF. Neither Perna nor any of the entities with which he is associated ever contracted with the appellees or their decedents. In addition, Perna negated the potential bases for general jurisdiction in his affidavit. The affidavit offered by Perna, in his capacity as an officer for Mobile Medical, establishes that since the company's inception in June 1999, Mobile Medical has not maintained an office, mailing address, telephone number, or bank account in Texas. Other than seminars conducted in November 2001 and May 2002, Mobile Medical has never had any employees or agents in the state. Other than certain torsos it leased from the willed body programs at UTMB and Southwestern University, Mobile Medical has never owned, leased, rented, or controlled any real or personal property in Texas.

As might be expected from such limited excerpts, the deposition testimony found in the record provides a fragmentary discussion of the appellants' contacts with this State. In the deposition, Perna testifies that Dr. Zurawin taught a gynecology seminar at Baylor in November 2001, and Perna's companies came to that seminar. Co-defendant Tyler flew out to medical conferences with cadavers from 1998 to

2002. Tyler would show Perna's technicians how to clean the torsos and keep them in good condition. Perna conducted 75 torso courses from 1998 through April 2002, using one to twenty torsos for each. Sixty percent of these courses were from other companies, forty percent were from his own companies. Perna estimates that he used between 150 and 300 torsos. A doctor pays $750 to $3,000 to attend a course. The first time Perna came to Texas was to meet Melinda Mora, the supervisor for Southwestern University's willed body program.[3] At this time, Perna's companies were already getting bodies from Mora, and he traveled to Dallas to discuss obtaining a specific type of tissue. He learned that they needed to be notified of his request three months in advance. Unless Tyler is an employee of the Anatomical Board, Perna has never spoken with a member of the board. The November 2001 Baylor College of Medicine Program was for doctors to learn laparoscopic gynecology. The program lasted two days; with a day spent preparing and a day spent packing, Perna and two technicians employed by Mobile Medical were in Houston for four days. Two of the bodies were provided by UTMB, and two were provided by Southwestern University. After the conference, Baylor University cremated the torsos.[4]

In response to the appellants' special appearance, the appellees filed a response that alleged that over the course of four years Perna personally came to Texas on behalf of himself and Mobile Medical, and personally illegally purchased as many as 300 cadaver torsos from UTMB and Southwestern University in Dallas. They also claimed that Perna personally solicited business in Texas, conducted seminars in Texas, and contracted with Allen Tyler, a Texas citizen, to perform work both inside and outside Texas. Although they refer to specific page numbers from the Perna's deposition, those excerpts do not appear in the record. Five pages of the Perna deposition excepts filed in the record are referred to in the response.

The trial court's findings of fact include findings that Perna, acting individually and on behalf of Mobile Medical, personally came to Texas numerous times to solicit business in Texas, purchase cadaver torsos in Texas, and conduct seminars in Texas; that he purchased as many as 300 cadaver torsos from UTMB and others; that he shipped torsos purchased in Texas to seminars that Perna and Mobile Medical conducted in Texas and other states; that he marketed the services of Mobile Medical in Texas through another company; that he came to Texas to negotiate the purchase of torsos from Allen Tyler, a Texas citizen, and also contracted with Tyler to perform consulting work both inside and outside Texas; that he paid Tyler over $80,000, and the invoices Tyler presented were mailed from Texas and payment was mailed to Texas; that he contracted with Dr. Zurawin for Baylor College of Medicine in Houston to work for Mobile Medical; and, that Perna hired Texas citizens to perform various services at his seminars. The trial court also found that Perna acted as a corporate agent for Mobile Medical for the detailed activities conducted in Texas, and that other employees of Mobile Medical came to Texas for a conference in 2001. Of these findings of fact, only the last two are supported by the record. These two findings do not satisfy any of the criteria in the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997).

---

3. Neither Mora nor Southwestern University are defendants in this litigation.

4. Baylor University is not a defendant in this litigation.

■ The appellants argue that the evidence before the pretrial judge did not support the exercise of either specific jurisdiction or general jurisdiction. Personal jurisdiction over nonresident defendants is constitutional if the defendants established minimum contacts with the forum state, and the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice. *BMC Software Belgium*, N.V., 83 S.W.3d at 795. To establish minimum contacts with a state, the defendants must do something purposeful to avail themselves of the privilege of conducting activities in the forum, thus invoking the benefit and protection of its laws. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). We apply the following test: (1) the nonresident defendants must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction, or the defendants' contacts with Texas must be continuing and systematic; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Id.* at 357–58. The purpose of the minimum-contacts analysis is to protect the defendants from being haled into court when their relationship with Texas is too attenuated to support jurisdiction. *Id.* at 357. We focus upon the defendants' activities and expectations in deciding whether it is proper to call them before a Texas court. *Id.*

■ The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A defendant is not subject to jurisdiction here if its Texas contacts are random, fortuitous, or attenuated. *See Guardian*, 815 S.W.2d at 226. Nor can a defendant be haled into a Texas court for the unilateral acts of a third party. *Id.* It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. *Id.* at 230 n. 11. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002), *cert. denied*, 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003).

■ First, the appellants argue that the evidence before the pretrial judge does not support a finding of specific jurisdiction. The appellees respond that the defendants committed torts in the State of Texas. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d at 806. The torts allegedly committed by the appellants are negligent handling of willed bodies and cremated remains, transferring bodies out of the state without authorization or for profit, and failing to return ashes to designated family members; violating a statutory duty to treat the willed bodies and cremated remains with respect and digni-

ty; and intentionally inflicting emotional distress upon the plaintiffs in failing to handle the willed bodies with respect and dignity, to abide by applicable laws and regulations, to keep required records, or to return donors' ashes. Of the acts the appellees claim that the appellants committed in Texas, the only acts found by the trial court for which there is evidence in the record concern the November 2001 conference in Houston. The appellants' acts in Texas include participating in two seminars, neither of which involved the body of a family member of any of the appellees, and there is no evidence that participation involved the commission of a tort by Perna or Mobile Medical. For instance, there is no evidence that either of the appellants disposed of human remains, and there is no evidence that they illegally purchased the bodies used in the conference. There is no contractual relationship between the appellants and the appellees. The record reflects the appellant had some sort of contractual relationship with Texas residents, but these are not suits on a contract between the appellants and either UTMB or Tyler, they are tort suits. We conclude that the evidence in the record does not support a finding of specific jurisdiction based upon torts committed in the State of Texas.

 Second, the appellants argue their contacts with the forum state do not justify an exercise of general jurisdiction because the contacts are not continuous and systematic. General jurisdiction requires a more demanding minimum-contacts analysis than specific jurisdiction. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d at 807. From the evidence in the record of the special appearance, neither Perna nor Mobile Medical maintained a place of business in Texas, owned any assets in Texas, maintained a registered agent in the state, paid taxes here, maintained a bank account, or controlled any real or personal property in the forum state. The appellees rely on Perna's deposition testimony to establish continuous and systematic contacts. The deposition testimony in the record established that Perna and Mobile Medical were present in Texas for four days in November 2001. The appellants' presence at the seminar involved some manner of contact with at least one corpse from UTMB. The appellants were not involved in the cremation of the remains of any of the bodies at the seminar. There is evidence that the appellants obtained at least 150 corpses, but the connection to the forum state is not revealed in the record. As a subdivision of the State, obviously UTMB is a Texas resident, but there is no evidence in the record that performance occurred in Texas, that corpses were purchased in Texas by either of the appellants. We conclude that the evidence in the record does not support a finding of general jurisdiction based upon continuous and systematic contacts with the State of Texas.

 Issue five challenges the pre-trial judge's conclusion of law that Perna and Mobile Medical knowingly participated in the commission of activities in the State of Texas and failed to negate all possible bases for personal jurisdiction. Issue six challenges the pre-trial judge's conclusion of law that Perna and Mobile Medical had contacts that were knowingly and intentionally directed at the forum state, and that harm in this State was foreseeable. The nonresident defendants' activities, whether they consist of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendants should reasonably anticipate being called into court there. *Schlobohm v. Schapiro*, 784 S.W.2d at 357. Although not outcome-determinative, foreseeability is an important consideration in deciding

whether the nonresident defendants purposely established minimum contacts with the forum state. *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 227. The appellants contend that their acts outside the forum state cannot meet the "purposeful availment" requirement of the minimum contacts analysis because Perna and Mobile Medical disposed of remains in the manner required by their contract and under the laws of the state where the seminars occurred. The appellees argue that the alleged torts arose in the context of an illegal purchase of cadaver torsos in Texas from Texas entities, and related to a contract centered and performed entirely in the State of Texas. As we have already discussed, the record does not support these allegations.

The record does not reflect that the appellants have sufficient minimum contacts with Texas such that an assertion of personal jurisdiction would comport with due process. Issues one, three, four, five, and six are sustained. We hold that the record does not support an assertion of personal jurisdiction over Agostino Perna and Mobile Medical Training Unit, L.L.C. The order denying the special appearances is reversed and the claims against Agostino Perna and Mobile Medical Training Unit, L.L.C., are dismissed for want of personal jurisdiction.

REVERSED AND RENDERED.