**Thu Thuy HUYNH, Valley Multi–Specialty Surgery Center and Unity Outpatient Surgery Center, L.L.C., Appellants,**

v.

**Thuy Duong NGUYEN, Ha Dinh Nguyen, Loan T. Duong, Phuong Duong, Kim Nguyen Luu, and Blue Cross and Blue Shield of Alabama, Appellees.**

No. 14–04–01027–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 4, 2005.

Rehearing Overruled Nov. 3, 2005.

Gregg C. Laswell, Jonathan S. Schmitt, Murry B. Cohen, Houston, Owen Stephen Jones, Friendswood, for appellants.

Richard Abram Stewart, David G. Dursam, Tammy Tran, Bradley M. Kirklin, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is an interlocutory appeal from the trial court's order denying the special appearances of two nonresidents. We affirm in part and reverse and remand in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellees, Thuy Duong Nguyen ("Thuy"), Ha Dinh Nguyen ("Ha"), Loan T. Duong ("Loan"), Phuong Duong ("Phuong"), and Kim Nguyen Luu ("Kim") (collectively, "the Patients"), brought suit against appellants, Johnny Huynh ("Johnny"), a Texas resident, Thu Thuy Huynh ("Thu"), a Texas resident, and Valley Multi–Specialty Surgery Center ("Valley"), a California corporation. The Patients allege that Johnny, Thu, and Valley recruited them in Houston, Texas, to undergo allegedly unnecessary and improperly billed medical procedures at Valley's clinic in California. The Patients assert that Johnny, Thu, and Valley conspired to defraud insurance companies for allegedly unnecessary diagnostic tests and cosmetic surgeries that allegedly were fraudulently coded and billed as necessary medical procedures covered by insurance.

The Patients allege that Johnny and Thu, acting as agents or employees of Valley, offered them cosmetic surgery at prices substantially below the market rate. According to the Patients, while still in Texas, the Patients would pay Johnny and Thu in cash for their cosmetic surgeries. The Patients would fly to California, and Johnny and Thu would meet them at the airport and transport them to Valley's clinic. At the clinic, the Patients were allegedly induced by Johnny, Thu, and other representatives of Valley to undergo un-

necessary diagnostic tests. The Patients assert that, without their knowledge, their insurance companies were billed or over-billed for these tests. The Patients also claim they were induced to sign various documents, authorizations, and assignments of insurance benefits. The Patients assert the doctors, surgeons, and medical providers received payment from the Patients' insurance companies through the assignment of benefits and then shared these allegedly ill-gotten proceeds with Johnny, Thu, Valley, and other surgeons. The Patients assert claims based on alleged common law fraud, violations of the Texas Deceptive Trade Practices Act, negligent misrepresentation, civil conspiracy, and tortious interference.

Thu and Valley filed special appearances contesting personal jurisdiction.[1] Blue Cross and Blue Shield of Alabama ("Blue Cross"), an Alabama corporation which is Loan's and Kim's insurer, filed a petition in intervention, naming Unity Outpatient Surgery Center, L.L.C. ("Unity"), a California corporation, as a defendant. Blue Cross asserts that it was a victim of the foregoing alleged conspiracy and fraudulent scheme. According to Blue Cross, Johnny, Thu, Valley, and Unity conspired to defraud consumers and health insurance companies. Specifically, Blue Cross alleges that it was improperly billed and has been required to pay over $140,000 for allegedly unnecessary diagnostic tests performed on Loan and Kim and for operations from doctors whom they never visited and whom they never authorized to perform any medical operations on them. In response to Blue Cross's petition in intervention, Unity filed a special appearance contesting personal jurisdiction.

---

1. Though served with process in this case, Johnny, who is allegedly Thu's younger broth-

er, has never appeared in this case.

After a hearing, the trial court denied the special appearances of Thu, Valley, and Unity. In this interlocutory appeal, Valley and Unity challenge the trial court's jurisdictional ruling.[2]

## II. STANDARD OF REVIEW

Whether Valley and Unity are subject to personal jurisdiction in Texas is a question of law subject to de novo review. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). The trial court did not issue any findings of fact or conclusions of law. Therefore, all facts necessary to support the trial court's ruling and supported by the evidence are implied in favor of the trial court's decision. *Id.* at 795. Parties may challenge the legal and factual sufficiency of these implied factual findings. *Id.* In conducting a no-evidence analysis, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony. *See id.* at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet*, 61 S.W.3d at 616.

## III. ISSUES AND ANALYSIS

■ Valley and Unity each challenge the trial court's implied findings of specific and general jurisdiction and its denial of their special appearances. The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 1997). It allows courts to exercise personal jurisdiction as far as the federal constitutional requirements of due process will permit. *See BMC Software*, 83 S.W.3d at 795. Thus, we rely on precedent from the United States Supreme Court and from other federal courts, as well as Texas decisions, in determining whether a nonresident defendant has shown that the exercise of personal jurisdiction violates federal due process guarantees. *Id.*

■ Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the

**2.** Even though she filed a notice of appeal, Thu has not filed an appellate brief and therefore is not challenging the trial court's denial of her special appearance.

forum state, and (2) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* A nonresident defendant that purposefully has availed itself of the privileges and benefits of conducting business in Texas has sufficient contacts to allow Texas courts to exercise personal jurisdiction over the nonresident. *Id.* Although not determinative, foreseeability is an important consideration in deciding whether the nonresident °defendant purposefully has established minimum contacts with Texas. *Id.* The concept of foreseeability is implicit in the requirement that there be a substantial connection between the defendants and Texas arising from their conduct purposefully directed toward Texas. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 227 (Tex.1991). A defendant should not be subject to a Texas court's jurisdiction based upon random, fortuitous, or attenuated contacts. *BMC Software,* 83 S.W.3d at 795.

▉▉▉▉ Specific jurisdiction exists when the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Am. Type Culture Collection Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex.2002). In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendants, Texas, and the litigation. *See Guardian Royal,* 815 S.W.2d at 228. General jurisdiction, however, implicates a more demanding minimum-contacts analysis, requiring a showing that the defendants conducted substantial activities within the forum. *CSR, Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996) (orig.proceeding). General jurisdiction exists when a defendant has "continuous and systematic general business contacts" with Texas so that Texas courts may exercise personal jurisdiction over the defendant even if the plaintiff's claims did not arise from or relate to the defendant's activities purposefully directed to Texas. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Am. Type Culture Collection,* 83 S.W.3d at 809–10.

## A. Did Valley and Unity waive their objections to jurisdiction?

▉▉▉ As an initial matter, we must address the Patients' and Blue Cross's contentions that both Valley and Unity waived their special appearances. An objection to a Texas court's exercise of personal jurisdiction over a nonresident is asserted by a special appearance under Rule 120a of the Texas Rules of Civil Procedure. *See* TEX.R. CIV. P. 120a. A special appearance must be made and determined on a sworn motion prior to any other plea, pleading, or motion that seeks affirmative relief. TEX.R. CIV. P. 120a(1)-(2); *see Dawson–Austin v. Austin,* 968 S.W.2d 319, 323 (Tex.1998). Any appearance before judgment that is not made in compliance with Rule 120a constitutes a general appearance. TEX.R. CIV. P. 120a(1). When a party enters a general appearance, the trial court can exercise personal jurisdiction over that party without violating the party's due process rights. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 201 (Tex.1985).

### 1. Valley

▉▉▉ The Patients and Blue Cross assert that Valley waived its special appearance by filing numerous pleadings with the trial court before filing its special appearance. *See* TEX.R. CIV. P. 120a(2). In response to the Patients' first amended petition, Valley's California counsel filed a pleading entitled, "Motion to Dismiss Plaintiffs' First Amended Petition." This was the first responsive pleading filed on behalf of Valley in this case. In this sworn motion, Valley requested dismissal on the

grounds that the court lacked personal jurisdiction over it. To support this plea for dismissal, Valley asserted it had never conducted business in Texas and had never committed any torts against the Patients in Texas. Looking at the substance of the pleading, we conclude that it is a special appearance because it seeks dismissal based on lack of personal jurisdiction. *See State Bar of Tex. v. Heard,* 603 S.W.2d 829, 833 (Tex.1980) (stating that the substance of a pleading for relief should be considered to determine the nature of the pleading, rather than considering merely the title or form given to it); *Houston Lighting & Power Co. v. Klein Indep. Sch. Dist.,* 739 S.W.2d 508, 514 (Tex.App.-Houston [14th Dist.] 1987, writ denied) (stating that the substance of a pleading is determined by the effect it will have on the proceeding if granted by the trial court). Because this was the first pleading Valley filed and it was, in substance, a special appearance, we conclude that Valley did not waive its special appearance in this manner.

The Patients and Blue Cross also allege that Valley made a general appearance by seeking affirmative relief from the trial court by a motion to quash Blue Cross's notice of deposition and motion for protective order. Valley filed this motion before the trial court ruled on its special appearance. Specifically, the Patients and Blue Cross argue that Valley waived its special appearance by having a motion for protection heard before the trial court determined Valley's special appearance. *See Shapolsky v. Brewton,* 56 S.W.3d 120, 139–40 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (holding that seeking affirmative relief from the trial court by requesting a temporary restraining order and

sanctions partially unrelated to discovery constituted a waiver of a special appearance).[3]

The use of discovery processes does not constitute a waiver of a special appearance. Tex.R. Civ. P. 120a(1). A nonresident defendant may file motions related to jurisdictional discovery and seek the trial court's ruling on disputes that may affect the evidence presented at the special appearance hearing without waiving its special appearance. *See Exito Elec. Co., Ltd. v. Trejo,* 142 S.W.3d 302, 307 (Tex.2004). A trial court's resolution of discovery matters related to the special appearance is not a general appearance by the party contesting personal jurisdiction. *Id.*

In this case, Valley's motion to quash and motion for protective order was filed in response to Blue Cross's notice of intention to take the deposition of one of Valley's corporate representatives. By this motion, Valley sought to quash the deposition notice and sought a protective order against Blue Cross on the grounds that three of the Patients—Loan, Phuong, and Kim—each executed arbitration agreements with Valley. Valley argued that Blue Cross's jurisdictional discovery requests from Valley were an attempt to circumvent the arbitration agreement. Valley also argued that Blue Cross was seeking substantive discovery under the guise of jurisdictional discovery. Valley's motion to quash and motion for protective order were related to jurisdictional discovery and sought the trial court's ruling on disputes that could have affected the evidence presented at the special appearance hearing. Therefore, we conclude that Val-

---

**3.** The Texas Supreme Court recently disapproved of the *Shapolsky* case on other grounds. *See Michiana Easy Livin' Country,* *Inc. v. Holten,* 168 S.W.3d 777, 789 n. 63 (Tex.2005).

ley did not waive its special appearance by filing such a motion. *See id.*

Accordingly, if the trial court found that Valley waived its special appearance by filing a pleading entitled "Motion to Dismiss Plaintiffs' First Amended Petition" or by filing a motion to quash and motion for protective order, then the trial court erred.

### 2. *Unity*

■ Blue Cross asserts Unity waived its objection to the court's exercise of personal jurisdiction by making a general appearance before filing its special appearance and by participating in Valley's argument of its motion for protection and motion to quash before the trial court heard and determined Unity's special appearance. Blue Cross argues that because Unity's attorney sought affirmative relief on a discovery-related issue and participated in arguing the motion for protection and motion to quash before Unity filed its special appearance, it waived its special appearance.

In response to Blue Cross's petition in intervention, which added Unity as a defendant, Unity filed its special appearance. One week before, Blue Cross deposed one of the Patients, Loan. Unity's attorney was present at that deposition on behalf of Thu and Unity. While examining Loan during her deposition, Unity's attorney became embroiled in a discovery dispute with the Patients' lawyer and Blue Cross's lawyer over a line of questioning. According to Blue Cross, Unity's attorney insisted that the trial court resolve the dispute by telephone. Blue Cross argues that by seeking this relief from the trial court before filing its special appearance, Unity entered a general appearance and therefore waived its special appearance.

The plain language of Rule 120a(1) states that the taking of depositions and the use of discovery processes do not con-stitute a waiver of a special appearance. Tex.R. Civ. P. 120a(1). In addition, a non-resident defendant may seek the trial court's ruling on disputes that may affect the evidence presented at the special appearance hearing without waiving its special appearance. *Exito Elec.*, 142 S.W.3d at 307. Because Unity was seeking relief from the trial court on a discovery-related issue that could have affected the evidence presented at the special appearance hearing, we conclude that Unity did not waive its special appearance by seeking such relief from the trial court. *See id.*

Blue Cross also alleges that Unity's attorney assisted in arguing Valley's motion to quash and motion for protective order. Valley's motions were filed in April 2004, and were argued before the trial court in May 2004. Unity filed its special appearance in June 2004. Blue Cross argues that by assisting in arguing these motions before filing its special appearance, Unity entered a general appearance and therefore waived its special appearance. Presuming without deciding that such assistance could waive a special appearance, the record does not show whether Unity's attorney rendered any such assistance. The record shows that Valley and Thu—not Unity—filed the motion to quash and motion for protective order. Nothing in our record indicates that Unity's attorney participated in arguing these motions before the trial court. Based on our review of the record, we conclude Unity did not waive its special appearance in the manner alleged.

Accordingly, the trial court erred to the extent it impliedly found that Unity waived its special appearance by seeking relief from the trial court on a discovery-related issue during Loan's June 22, 2004 deposition. The trial court also erred to the extent it impliedly found that Unity waived its special appearance by arguing Valley's motion to quash and motion for protective

order because the record does not reflect that Unity's attorney was present at or participated in the hearing.

## B. Did the trial court properly conclude that it could exercise personal jurisdiction over Unity?

In two issues, Unity argues it is not subject to either specific or general jurisdiction. Specifically, Unity asserts that the trial court erred by denying its special appearance because (1) the Patients never filed a claim against Unity; (2) Unity lacks the requisite minimum contacts to establish specific or general jurisdiction; and (3) exercising jurisdiction over it would violate traditional notions of fair play and substantial justice. Conversely, Blue Cross alleges that Unity's activities were purposefully directed at Texas, both as a corporate entity and through its alleged agents or employees, Johnny and Thu.

 Unity argues the trial court improperly denied its special appearance because the Patients never sued Unity. As explained above, Blue Cross intervened as a party-plaintiff naming Unity as a defendant in its petition in intervention. Unity does not cite, and we have not found, any authority to support the notion that the failure of the plaintiffs to sue a party deprives a court of personal jurisdiction over claims by an intervenor. We reject this proposition.

Unity also asserts that plaintiffs must specifically plead in their petition the personal-jurisdiction grounds upon which they rely and that, because the Patients have filed no petition against Unity, this pleading requirement has not been satisfied.

Unity relies on a case that indicates that plaintiffs must plead in their petitions the specific basis of personal jurisdiction upon which they rely. *See Temperature Sys., Inc. v. Bill Pepper, Inc.,* 854 S.W.2d 669, 673–74 (Tex.App.-Dallas 1993, no writ). To the extent this case holds that such a pleading requirement exists, we respectfully disagree.

 There is no requirement that plaintiffs or other claimants plead in their petition the theories or bases of personal jurisdiction upon which they rely; rather, the only relevant pleading requirement flows from the need to plead allegations sufficient to bring nonresident defendants within the provisions of the long-arm statute. *See Am. Type Culture Collection,* 83 S.W.3d at 807 (stating plaintiffs bear the initial burden of pleading allegations sufficient to bring nonresident defendants within the provisions of the long-arm statute); *Siskind v. Villa Found. For Educ., Inc.,* 642 S.W.2d 434, 437–38 (Tex.1982) (indicating that plaintiffs must allege an act by nonresident defendants in Texas in their petition to avoid a dismissal for lack of personal jurisdiction). This minimal pleading requirement is satisfied by an allegation that the nonresident defendants are doing business in Texas.[4] *See Perna v. Hogan,* 162 S.W.3d 648, 652–53 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (indicating that pleading requirement can be satisfied by alleging that defendant is doing business in Texas or that defendant has committed any act in Texas); *El Puerto De Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.,* 82 S.W.3d 622, 629 (Tex.App.-Corpus Christi 2002,

4. At least one court of appeals has gone so far as to hold that the plaintiffs' failure to allege in the petition that the defendants are doing business in Texas or committed an act in Texas still does not entitle a nonresident to dismissal for lack of personal jurisdiction if the plaintiffs make such an allegation in their response in opposition to the special appearance. *See Perna v. Taylor,* 146 S.W.3d 791, 796–97 (Tex.App.-Beaumont 2004, no pet.); *but see Perna,* 162 S.W.3d 648, 652–53.

pet. dism'd w.o.j) (indicating that pleading requirement can be satisfied by alleging that defendant is doing business in Texas). Because Blue Cross pleaded in its petition in intervention that Unity conducted business in Texas and committed torts in Texas, Blue Cross satisfied this pleading requirement.

Furthermore, Unity cites no case for its assertion that Blue Cross must rely upon the allegations of the Patients' petition, in which no claims are asserted against Unity, to satisfy the pleading requirement as to Blue Cross's claims against Unity in its petition in intervention. We disagree and base our ruling on the allegations of Blue Cross's petition in intervention.

Although the trial court did not expressly find that either Thu or Johnny were Unity's agents or employees, we presume the trial court impliedly found all facts necessary to support the judgment if supported by legally and factually sufficient evidence. *See Am. Type Culture Collection*, 83 S.W.3d at 806. Therefore, we construe Unity's argument that it is not subject to specific jurisdiction in Texas as an attack on the legal and factual sufficiency of the evidence to support the trial court's implied findings that Johnny and Thu were acting as agents or employees of Unity. *See Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

The Texas contacts of agents or employees are attributable to their nonresident principals. *See Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 214 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). On appeal, Unity asserts that Thu was never its agent or employee. At her deposition, Thu testified as follows:

● She worked for "Unity" and understood she was an employee of "Unity."

● "Unity" paid her a salary to recruit patients from Houston, Texas.

● "Unity" reimbursed her for advertising costs related to these recruiting efforts.

At the end of her deposition, Thu testified that she had never heard of Unity Outpatient Surgery Center, L.L.C. and that Unity Outpatient Surgery Center, Inc. paid her. Despite this testimony, the trial court, as finder of fact, could have credited her former testimony and concluded that the "Unity" that Thu referred to was Unity Outpatient Surgery Center, L.L.C. On appeal, Unity does not address whether Johnny was acting as Unity's agent or employee. After reviewing the evidence in the record under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's implied findings (1) that both Thu and Johnny were acting as Unity's agents or employees when they solicited the Patients in Texas, and (2) that Blue Cross's claims against Unity arise from or relate to Unity's purposeful contacts with Texas. Accordingly, we overrule Unity's first issue.[5]

In addition to sufficient minimum contacts with Texas, federal due process requires that the exercise of personal jurisdiction comport with traditional notions of fair play and substantial justice. *See Guardian Royal*, 815 S.W.2d at 228. In deciding this issue, the court should consider the following factors:

● the burden of the defendant;

---

5. Having concluded that the trial court did not err in denying Unity's special appearance because Unity is subject to specific jurisdiction in Texas, we need not address Unity's contention that it is not subject to general jurisdiction.

- the interests of the forum state in adjudicating the dispute;
- the plaintiffs' interests in obtaining convenient and effective relief;
- the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and
- the shared interest of the several states in furthering fundamental substantive social policies.

*Id.*

 Unity asserts several reasons that it claims a Texas court's assertion of jurisdiction over it would offend traditional notions of fair play and substantial justice and would be inconsistent with due process requirements. First, it asserts that defending itself in Texas is unduly burdensome because Unity is a California corporation without any minimum contacts with Texas. Second, it claims Texas has little interest in adjudicating the dispute because the transaction at issue in this case is directed at California, not Texas. Unity concedes that Texas may have an interest in providing a forum for the Patients to obtain redress for the alleged wrongs by Unity, but it argues that this interest is considerably lessened in this case because Blue Cross is an Alabama corporation and cannot prove that Unity has done any harm to it in Texas. Unity argues that Blue Cross asserts claims due to alleged actions in California, not Texas. Under these circumstances, Unity contends, it would be unfair for a Texas court to exercise personal jurisdiction over it.

 Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal*, 815 S.W.2d at 231. Unity must present a compelling case that the presence of some other considerations would render the exercise of personal jurisdiction unreasonable. *See id.* Despite this burden of negating all bases of personal jurisdiction, Unity did not propound any evidence regarding the factors we consider in determining whether the exercise of personal jurisdiction comports with fair play and substantial justice, including the burden on Unity of litigating in Texas. Unity has not made a compelling case that it would be unreasonable for the court to exercise personal jurisdiction in this case. Distance alone is usually insufficient to defeat personal jurisdiction because modern transportation and communication have made it less burdensome to defend lawsuits in a state in which the defendant engages in economic activity. *See id.* After carefully considering all of the relevant factors, we hold the exercise of personal jurisdiction over Unity in this case comports with traditional notions of fair play and substantial justice. *See Intercarga, S.A. v. Fritz Companies, Inc.*, No. 14–02–00297–CV, 2003 WL 21402583, at *9 (Tex.App.-Houston [14th Dist.] June 19, 2003, no pet.) (holding that the exercise of personal jurisdiction would comport with fair play and substantial justice). Accordingly, we overrule Unity's second issue.

## C. Did the trial court properly conclude that it could exercise personal jurisdiction over Valley?

In its sole issue on appeal, Valley asserts that a Texas court cannot assert personal jurisdiction over it consistent with constitutional due process because (1) Valley does not have sufficient minimum contacts with Texas and (2) a substantial connection does not exist between Valley and Texas that came about from actions purposefully directed towards Texas. The Patients and Blue Cross assert that Valley's activities, both as a corporate entity and through its alleged agents or employees,

Johnny and Thu, were purposefully directed at Texas and are adequate to support implied findings of both specific and general jurisdiction.[6]

### 1. Thu and Johnny as Valley's Alleged Agents or Employees

The Texas contacts of agents or employees are attributable to their nonresident principals. *See Alenia Spazio, S.p.A.*, 130 S.W.3d at 214. Although the trial court did not expressly find that either Thu or Johnny were Valley's agents or employees, we presume the trial court impliedly found all facts necessary to support the judgment if supported by legally and factually sufficient evidence. *Am. Type Culture Collection*, 83 S.W.3d at 806. Valley asserts that there is no evidence to support the trial court's implied findings that Johnny and Thu were acting as agents or employees of Valley. The affidavit of Wendy Schneider proved that Thu and Johnny were not employees or agents of Valley. Furthermore, at her deposition, Thu testified that she never worked for Valley, that she never received any money from Valley, that she did not have any direct contact with anyone at Valley, and that the only contact she had regarding her marketing business in California was with someone from Unity.

On appeal, the Patients and Blue Cross point to the following deposition testimony:

- Kim testified that she understood that Thu was working for Valley, based on Kim's observation of Thu talking to staff at the Valley center.

- Kim testified that Thu told her she worked for Valley.

- Loan testified that Thu told her that she was working for Valley and being paid by Valley.

- Loan testified that, at the Valley center, Thu knocked on the door, and someone opened the door for Thu to go "in the back."

- Loan testified that she thought that Thu acted like she worked at the Valley center because Thu walked back and forth comfortably and freely.

- Loan testified that Thu did not fill out Loan's paperwork but guided Loan in filling out her paperwork.

- Phuong testified that Thu told Phuong that Thu was working for Valley but that Thu did not tell Phuong that she was being paid by Valley.

- Phuong testified that Thu went into the back part of the Valley center where other "Valley people" were working and that Phuong saw Thu preparing paperwork with someone else from the clinic.

- Phuong testified that Thu filled out Phuong's paperwork for her.

- Phuong believed that Thu was working for Valley because Thu acted so naturally and at ease and because she prepared paperwork.

- Phuong testified that no one other than Thu told her that Thu worked for Valley.

The law does not presume agency. *Suarez v. Jordan*, 35 S.W.3d 268, 272–73 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Absent actual or apparent authority, an agent cannot bind a principal. *Id.* Both actual and apparent authority are created through conduct of the principal communicated either to the agent

---

**6.** In their petition, the Patients allege that Valley is doing business in Texas, thus satisfying the pleading requirement regarding nonresident defendants. *See, e.g., El Puerto de Liverpool, S.A. de C.V.*, 82 S.W.3d at 629. Valley had the burden to negate all bases of personal jurisdiction. *See BMC Software*, 83 S.W.3d at 793.

(actual authority) or to a third party (apparent authority). *Id.* Actual authority denotes authority that the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of ordinary care allows the agent to believe himself to possess. *Id.* In determining whether apparent authority exists, we look to the acts of the principal and ascertain whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *Id.* Only the conduct of the principal may be considered; representations made by the agent of his authority have no effect. *Id.* Furthermore, the principal either must have affirmatively held the agent out as possessing the authority or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Id.*

After reviewing the evidence properly before the trial court under the applicable legal standard, we conclude that Valley conclusively proved, as a matter of law, that Thu and Johnny were not agents or employees of Valley. *See id.* Most of the evidence upon which the Patients and Blue Cross rely to show agency relates to alleged statements by Thu, which are insufficient as a matter of law. *Id.* There is no evidence of acts by Valley that would lead a reasonably prudent person using diligence and discretion to suppose Thu had the authority to act on behalf of Valley. There is no evidence that Valley affirmatively held Thu out as possessing this authority or that Valley knowingly and voluntarily permitted Thu to act in an unauthorized manner. Therefore, we cannot count the contacts of Thu and Johnny with Texas as being contacts of Valley for jurisdictional purposes.

### 2. General Jurisdiction

■ The Patients and Blue Cross assert that the trial court may exercise personal jurisdiction over Valley under a general jurisdiction analysis based on the following contacts: (1) the contacts of Valley's alleged agent or employee Thu with Texas, (2) Valley's advertising in Texas, (3) the attendance of Valley employees at meetings in Dallas three years ago, (4) possible trips by Valley's financial director (Wendy Schneider) to Texas with Valley's founder and principal, Dr. Gene Zdenek more than five times, (5) Valley's treatment of more than thirty-five Texas residents at Valley's facility in the past five years, and (6) Valley's sending of eighteen claims to insurance carriers in Texas over the past five years.

As stated above, we cannot count the contacts of Thu with Texas as being contacts of Valley. As to advertising, the evidence conclusively proves as a matter of law that Valley did not conduct any advertising in Texas.[7] Schneider testified that the possible five trips to Texas with Dr. Zdenek were on behalf of the Zdenek Eye Institute, not Valley. Reviewing the record evidence under the applicable standard of review, we conclude that the evidence conclusively proves as a matter of law that the nature and quality of Valley's contacts with this state do not rise to the level of continuous and systematic general business contacts with Texas.[8] *See Helicopte-*

7. There is evidence in the record that Unity and Thu advertised in various Vietnamese publications in the Houston area, but these are not contacts of Valley.

8. Valley asserts on appeal that this court should use the "out-of-state" doctor personal-jurisdiction analysis that this court used in *Brocail v. Anderson,* 132 S.W.3d 552, 559–64 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). We decline to do so because we conclude that this analysis is limited to certain personal-jurisdiction issues regarding medi-

*ros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Alenia Spazio, S.p.A.,* 130 S.W.3d at 216–20. Therefore, the trial court erred to the extent it impliedly determined it could exercise personal jurisdiction over Valley based on general jurisdiction.

### 3. Specific Jurisdiction

■ In support of its special appearance, Valley filed the affidavit of Wendy Schneider, Valley's financial director, copies of services agreements between Valley and various surgical entities, and an excerpt from Thu's oral deposition. In her affidavit, Schneider testifies as follows:

- Dr. Zdenek, a California ophthalmologist, is the founder and sole owner of Valley, a corporation formed and incorporated under California law.
- Since 1991, Valley has been the owner of a surgery center located in Reseda, California.
- Although Dr. Zdenek has performed many surgeries at the surgery center, Valley has rented the center out for use by other doctors.
- Valley is not incorporated in Texas and has no subsidiaries incorporated in Texas.
- Valley maintains no office or any other type of facilities in Texas and has no officers, directors, or employees who live in Texas.
- No Valley employees have ever traveled to Texas in their capacities as Valley employees.
- At no time has Valley contracted with any persons residing or operating in Texas to act on its behalf with respect to marketing to or service of any of Valley's patients.
- Valley does not have a telephone listing in Texas.
- Valley does not have any bank accounts in Texas.
- Valley owns no real or personal property in Texas, and Valley has never sold, purchased, or leased property in Texas.
- Valley has never advertised in Texas, nor has it directed any advertising activities to any Texas residents.
- Valley has never made any purchases in Texas, applied for a loan in Texas, attended any trade shows or conventions in Texas, or had any business meeting in Texas.
- Valley has never sued or been sued in Texas (except for this suit).
- Limited contact information about Valley is maintained on a passive website dedicated to the Zdenek Eye Institute.
- Valley served as a landlord to A–MED, Inc., St. John Medical Group, and Antioch Management, Inc. (hereinafter the "Companies") and leased its facilities to these entities under the terms of the services agreements attached to Schneider's affidavit.
- Upon information and belief, the Companies are all related to Unity.
- Valley did not initiate the contact with the Companies; rather, the Companies initially contacted Valley.
- Valley had no involvement in the process by which the Companies' patients initially sought medical treatment for their physical ailments.
- Valley had no involvement in the diagnosis of the Companies' patients.

cal-malpractice claims against out-of-state doctors. The claims at issue in the present case are not medical-malpractice claims.

- Valley had no involvement in any solicitation of the Companies' patients.
- Valley had no involvement in the arrangements by which the Companies' patients were brought to Valley for medical treatment.
- Valley had no involvement in any of the Companies' patients' decisions to have medical procedures performed.
- Valley had no involvement in the selection of doctors who initially treated or diagnosed the Companies' patients.
- Valley had no involvement in the selection of the doctors who performed the surgeries or other medical procedures on behalf of the Companies' patients.
- Valley had no involvement in the determination of the medical necessity of the medical procedures that were performed on the Companies' patients.
- Doctors arranged and paid by the Companies, not Valley, performed all of the medical procedures and surgeries.
- Valley's personnel had no involvement in any attempt to collect the bills generated by the Companies.
- Valley never employed Johnny and never stated or represented to any person or organization that Johnny was an employee or agent of Valley.
- Valley never employed Thu and never stated or represented to any person or organization that Thu was an employee or agent of Valley.
- Valley never employed the Companies and never stated or represented to any person or organization that the Companies were agents of Valley.
- Valley did not employ an employee who can speak Vietnamese at any time from the year 2002 to today.

Valley also introduced into evidence various services agreements between Valley and each of the Companies. Valley's agreement with A–MED, Inc. states in part:

> After each procedure is completed, A–MED shall deliver to [Valley] appropriate documentation (including notice of assignments for medical service providers, identification numbers, and a copy of any applicable lien) and a statement and/or invoice, as needed, to submit billing documents to the responsible payor, which will then be transmitted to the appropriate payor under [Valley's] name and appropriate identification number. ... [Valley] agrees to pay A–MED within ten business days of [Valley's] receipt of funds from the payor, 98% of such gross receipts received, the remaining 2% of gross receipts to be retained by [Valley], in addition to any other sums due and payable to [Valley], pursuant to the terms of this Agreement.

Valley's services agreements with St. John Medical Group, and Antioch Management, Inc. contain substantially similar language, except that Valley's portion of the gross receipts is ten percent rather than two percent.

Valley also introduced a declaration stating that Thuy and Ha did not have their medical procedures performed at Valley's surgical center. Medical records supporting this testimony indicate that Thuy and Ha had their medical procedures performed at a Unity surgical center in Buena Park, California, rather than at Valley's surgical center in Reseda, California. In their deposition testimony, Thuy and Ha confirm that their procedures were performed at a Unity outpatient center, as opposed to Valley's surgical center.

The evidence conclusively proves as a matter of law that procedures performed on Thuy and Ha did not occur in Valley's

surgical facility. After reviewing the evidence in the record under the applicable standard of review, we conclude that the evidence conclusively proves as a matter of law that the claims of Thuy and Ha against Valley do not arise from or relate to the Valley's purposeful contacts with Texas. *See Alenia Spazio, S.p.A.*, 130 S.W.3d at 210–16.

 As to the claims of Loan, Phuong, and Kim, and the claims of Blue Cross that are based on treatment of its insureds Loan and Kim, the analysis is different. The evidence shows that Loan, Phuong, and Kim received the medical treatments in question at Valley's surgical facility. Much of Schneider's affidavit in support of Valley's special appearance is based on Valley's services agreements with the Companies, and many of Schneider's jurisdictional denials are stated in terms of the Companies and the Companies' patients. There is no evidence in our record, however, that Loan, Phuong or Kim received their medical treatment as patients of any of the Companies. There is no evidence in the record that any of the Companies recruited Loan, Phuong, or Kim to have their medical procedures performed at Valley's surgical center or that Thu or Johnny were acting on behalf of any of the Companies when they allegedly recruited Loan, Phuong, and Kim. The terms of the services agreements between Valley and the respective Companies require the Companies to give Valley documentation that would show all of the patients treated at Valley's facility under these services agreements. Nonetheless, neither Schneider nor any witness on behalf of Valley has testified that any of the Patients were treated under one or more of these agreements. There is no evidence in the record that the terms of the services agreements between Valley and the Companies apply to Loan, Phuong, or Kim.

Furthermore, in their petition, Loan, Phuong, and Kim allege that their insurance companies mistakenly sent them payments for diagnostic tests that Valley allegedly fraudulently billed to their insurers. Loan, Phuong, and Kim allege that their insurers mistakenly sent them payments for these allegedly fraudulent diagnostic tests. In her deposition, Loan testified that her insurance company sent her a check for "too much money" that she suspected was related to insurance fraud. After she received this check, Loan testified she received approximately ten phone calls from people who identified themselves as representatives of Valley, demanding payment. Likewise, Phuong testified at her deposition that she received letters and phone calls from Valley seeking payment for her procedures. Schneider asserts in her affidavit that Valley's personnel had no involvement in any attempt to collect the bills generated by the Companies; however, as mentioned above, there is no evidence that the bills relating to Loan, Phuong, or Kim were generated by the Companies. Valley did not provide the trial court with evidence as to its relationship to the persons and entities involved in the medical treatment in question of Loan, Phuong, and Kim at Valley's surgical center or as to Valley's role, if any, in seeking to collect funds in Texas that Loan, Phuong, Kim, and Blue Cross allege were the result of insurance fraud by Valley and others.

After reviewing the evidence in the record under the applicable standard of review, we conclude that the trial court did not err in impliedly finding Valley failed to meet its burden of proving that the claims of Loan, Phuong, Kim, and Blue Cross against Valley do not arise from or relate to Valley's purposeful contacts with Texas.[9] *See BMC Software*, 83 S.W.3d at 793

9. We note that Valley does not argue on ap-

peal that the trial court's exercise of personal

(stating that party asserting special appearance has burden of negating all bases of jurisdiction); *Alenia Spazio, S.p.A.,* 130 S.W.3d at 210–16.

Accordingly, we sustain Valley's sole issue on appeal to the extent that Valley asserts the trial court erred in denying its special appearance as to the claims asserted by Thuy and Ha; otherwise, we overrule Valley's issue. We reverse the trial court's order to the extent it denied Valley's special appearance as to all the claims asserted by Thuy and Ha against Valley, and we remand to the trial court with instructions to dismiss these claims for lack of personal jurisdiction. Otherwise, we affirm the trial court's order.

## V. Conclusion

Neither Valley nor Unity waived its special appearance. The evidence before the trial court is legally and factually sufficient to support the trial court's implied findings regarding the assertion of personal jurisdiction over Unity. Therefore, the trial court did not err in denying Unity's special appearance. Accordingly, we overrule Unity's two issues on appeal and affirm the trial court's order denying Unity's special appearance. We reverse the trial court's order to the extent it denied Valley's special appearance as to the claims asserted by Thuy and Ha against Valley, and we remand to the trial court with instructions to dismiss these claims for lack of personal jurisdiction. We affirm the remainder of the trial court's order.

jurisdiction over it would offend traditional notions of fair play and substantial justice, so

we need not address this issue.