**Affirmed and Memorandum Opinion filed September 10, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-01107-CV

## CHANGCHUN GAOXIANG SPECIAL PIPES CO., LTD. ("GOLSUN"), Appellant

## V.

## FLEXSTEEL PIPELINE TECHNOLOGIES, INC., Appellee

### On Appeal from the 234th District Court
### Harris County, Texas
### Trial Court Cause No. 2015-52962

## MEMORANDUM OPINION

Appellant Changchun Gaoxiang Special Pipes Co., Ltd. ("Golsun"), a company organized under the laws of China, appeals the denial of its special appearance based on specific jurisdiction. Concluding the trial court did not err in denying the special appearance, we affirm.

### BACKGROUND

Appellee FlexSteel Pipeline Technologies, Inc. was a division of Wellstream

International Limited, which is a provider of flexible pipe used in offshore oil and gas operations. As a division of Wellstream, FlexSteel focused on developing flexible pipes for the onshore and shallow water oil and gas markets. In 2009, FlexSteel became a stand-alone company and Wellstream's successor in interest.

Bin Chen, a defendant in the trial court, but not a party to the special appearance, worked as an employee and consultant for Wellstream for fifteen years. Chen, a Houston resident, had access to FlexSteel's confidential information, trade secrets, and other intellectual property. As part of his employment with Wellstream, Chen assigned all right, title, and interest in all original works of art and other matters he produced to Wellstream. Chen was one of the creators of a proprietary pipe designing software, which FlexSteel used in the design and manufacture of its products. FlexSteel named the software its "Pipemaker" program, and treated its patent for the flexible pipe, the machine used to manufacture the pipe, and the indentity of its manufacturer as trade secrets. Chen was also general manager of certain businesses in Houston, including Premiere Offshore and BW Tech.

Chen left FlexSteel in March 2005 but continued to work as a consultant until 2008. Within weeks of leaving FlexSteel Chen designed and applied for a Chinese patent for flexible pipe, which FlexSteel alleged mirrored its patented design, also designed by Chen.

Golsun began as a government-owned research institute in China. Shichun Li is Golsun's chairman and CEO. In 2004, Golsun wanted to expand its product base to pipe that could withstand higher pressure. At the time Li met Chen and learned that Chen did the kind of pipe design work Golsun was seeking. Li and Chen discussed a joint venture with a company called FlexKing.

In December 2005, Li traveled from China to Houston to attend a board meeting at which Li, Chen, and other FlexKing partners discussed plans for

2

manufacturing pipe that Chen designed pursuant to his China patent to be built for the FlexKing joint venture. Those discussions included a plan to obtain the same machine FlexSteel used to manufacture pipe from Flexsteel's supplier. FlexSteel treated the machine and the identity of its manufacturer as trade secrets. FlexSteel alleged that despite its "desire to protect the identity of that vendor, and in particular the modifications made to the vendor's machine that allowed it to wrap steel tape around a flexible oilfield pipe, that information was disclosed to Li and his Golsun colleagues at these board meetings and Golsun, through Chen, initiated the process of purchasing the very same machine from the very same company." The minutes of the board meeting reflected that the board resolved to allow Chen to join the joint venture to be primarily responsible for the pipe design.

At the time of the FlexKing joint venture Li discussed with Chen whether Golsun could use FlexSteel's patented pipe design. Chen explained to Li that Golsun could not use FlexSteel's design to manufacture pipe because the design was patented by FlexSteel. Ultimately, the FlexKing joint venture did not succeed in manufacturing and selling flexible pipe.

After the failure of the joint venture Chen assigned his Chinese pipe patent to Golsun and joined Golsun as its Technology Controller. Chen developed for Golsun a Microsoft Excel based pipe designing programs (the "Chen Excel Tool") that FlexSteel alleged performed the exact same function as FlexSteel's Pipemaker program, which Chen designed for FlexSteel.

According to FlexSteel's pleadings, Golsun subsequently used Chen's design and a machine provided by FlexSteel's supplier to manufacture flexible steel pipe and sold the pipe to the Venezuelan national oil company, PDVSA. FlexSteel alleged that Golsun was able to manufacture and sell its pipe as a result of Chen's unlawful disclosure of its confidential information and Golsun's misappropriation of

3

FlexSteel's trade secrets.

FlexSteel sued Chen and Golsun in state court for trade secret misappropriation, breach of contract, tortious interference with a contract, breach of fiduciary duty, and inducement or participating in the breach. Golsun specially appeared, asserting that none of the claims in FlexSteel's live pleading arose from sufficient minimum and purposeful contacts with Texas to satisfy specific jurisdiction over Golsun. After a hearing with no live testimony, the trial court denied Golsun's special appearance. Findings of fact and conclusions of law were not requested or filed.

In three issues Golsun asserts the trial court erred because (1) FlexSteel's allegations pertaining to Golsun's contacts with Texas did not meet its burden of pleading jurisdictional facts sufficient to bring Golsun within the provisions of the Texas long-arm statute; (2) if so, Golsun did not establish minimum contacts with Texas because (a) it is undisputed that Golsun never sold products containing the alleged trade secrets in Texas; and (b) there is no legally or factually sufficient evidence that any of the alleged trade secrets were disclosed to Golsun during the only Texas meeting that predated the sale to PDVSA; and (3) even if Golsun had minimum contacts with Texas, it would offend traditional notions of fair play and substantial justice to require a Chinese company, which does no business in Texas, to litigate this matter in Texas courts.

## ANALYSIS

### I.  Standard of Review and Applicable Law

We review de novo a trial court's denial of a special appearance. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). When, as here, the trial court does not issue findings of fact and conclusions

4

of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Parties may challenge the legal and factual sufficiency of these implied factual findings. *Id*.

In a legal sufficiency review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *BMC Software*, 83 S.W.3d at 795 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We will set aside a finding on legal sufficiency grounds only if (a) there is a complete absence of a vital fact, (b) we are barred by legal or evidentiary rules from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id*. In reviewing for factual sufficiency, we consider all the evidence; we will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id*. Finally, we review the trial court's legal conclusions de novo. *Id*.

The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. Tex. Civ. Prac. & Rem. Code § 17.042. The Supreme Court of Texas has interpreted the broad language of the Texas long-arm statute to extend Texas court's personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *M & F Worldwide*, 512 S.W.3d at 885. A plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the scope of the long-arm statute. *BMC Software*, 83 S.W.3d at 794–95. A defendant challenging a Texas court's personal jurisdiction must negate all jurisdictional bases alleged. *Id*.

5

A trial court may constitutionally exercise personal jurisdiction over a party when (1) the nonresident defendant has minimum contacts with the forum state and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 62 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *M & F Worldwide*, 512 S.W.3d at 886. "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A nonresident defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *Id*. General jurisdiction arises when a defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *M & F Worldwide*, 512 S.W.3d at 885 (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014). General jurisdiction concerns a court's ability to exercise jurisdiction over a nonresident defendant as to any claim, including claims unrelated to the defendant's contacts with the forum. *Id*. The test for general jurisdiction "requires 'substantial activities within the forum' and is a 'high bar,' *Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 72 (Tex. 2016), presenting 'a more demanding minimum contacts analysis than for specific jurisdiction.'" *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016)

(quoting *BMC Software*, 83 S.W.3d at 797). Even when a defendant's contacts may be continuous and systematic, they are insufficient to confer general jurisdiction if they fail to rise to the level of rendering a defendant "essentially at home in the forum [s]tate." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018).

In analyzing specific jurisdiction, on the other hand, we focus on the relationship among the defendant, the forum, and the particular litigation at hand. *See M & F Worldwide*, 512 S.W.3d at 886 (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) and *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575-76 (Tex. 2007)). Specific jurisdiction is established when the plaintiff's cause of action arises from or relates to the defendant's alleged minimum contacts within the forum. *Id*. For specific jurisdiction purposes, a defendant's minimum contacts with a forum are established when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*. (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). Three principles govern the purposeful-availment analysis: (1) "only the defendant's contacts with the forum" are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be "purposeful" and not "random, isolated, or fortuitous"; and (3) the defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" such that it impliedly consents to suit there. *Id*. "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id*.

Specific jurisdiction is transaction focused. *Napoli, Bern, Ripka, Shkolnik & Associates, LLP v. Stratos Legal Services*, No. 14-18-00420-CV, 2019 WL 2589885, at *4 (Tex. App.—Houston [14th Dist.] June 25, 2019, no pet.) (mem. op.). As such,

specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis. *See, e.g., Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010) (separately analyzing jurisdictional contacts for fraud and trust fund claims to determine specific jurisdiction). When separate claims are based on the same forum contacts, however, a separate analysis of each claim is not required. *Wilmington Tr., Nat'l Ass'n v. Hsin-Chi-Su*, 573 S.W.3d 845, 854 (Tex. App.—Houston [14th Dist.] 2018, no pet.). No party has alleged general jurisdiction in this case. Therefore, we focus on specific jurisdiction and because FlexSteel's claims each arise out of the same alleged forum contacts, we analyze FlexSteel's claims together.

## II. FlexSteel met its initial burden to plead allegations sufficient to confer jurisdiction.

In its first issue Golsun asserts that FlexSteel's allegations pertaining to Golsun's contacts in Texas did not meet its burden of pleading jurisdictional facts sufficient to bring Golsun within the provisions of the Texas long-arm statute.

FlexSteel pled that Golsun and Chen committed torts in Texas by misappropriating FlexSteel's alleged trade secrets in violation of Chen's confidential or contractual relationship with FlexSteel and its predecessor Wellstream. By pleading misappropriation of trade secrets in Texas, FlexSteel has met its initial burden of alleging a cause of action sufficient to confer jurisdiction under the long-arm statute. *See Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013) (holding that pleading that trade secrets were misappropriated in Texas satisfies the plaintiff's initial pleading burden); Tex. Civ. Prac. & Rem. Code § 17.042(2). Because FlexSteel met its burden of pleading jurisdictional facts sufficient to bring Golsun within the provisions of the Texas long-arm statute, we overrule Golsun's first issue.

## III. Chen's contacts with Texas are attributable to Golsun.

In its second issue Golsun argues it did not establish minimum contacts with Texas because (a) it is undisputed that Golsun has never sold products containing alleged trade secrets in Texas; and (b) the evidence is legally and factually insufficient to show that any alleged trade secrets were disclosed to Golsun during meetings in Texas.

When the initial burden is met, the burden shifts to the defendant to negate all potential bases for personal jurisdiction the plaintiff pled. *Retamco*, 278 S.W.3d at 337. Golsun first argues it has not purposefully availed itself of the privilege of conducting activities within Texas because it has not sold products in Texas. In asserting this argument Golsun cites the Texas Supreme Court's opinion in *M & F Worldwide Corp. v. Pepsi-Cola*, in which the court found no specific jurisdiction because, among other things, there was no allegation that a tort was committed in Texas. 512 S.W.3d at 887. In coming to that conclusion the supreme court referenced its decision in *Moncrief*, stating in that case the court "held that Texas courts had specific jurisdiction over nonresident defendants with respect to a misappropriation-of-trade-secrets claim where the defendants 'attended two Texas meetings with a Texas corporation and accepted [the plaintiff's] alleged trade secrets created in Texas regarding a potential joint venture in Texas with the Texas corporation.'" *Id.* (quoting *Moncrief*, 414 S.W.3d at 154).

We do not read the court's opinions in *M & F Worldwide Corp.* and *Moncrief* to require a nonresident to sell products in Texas before being subject to personal jurisdiction in Texas. Allegations that a tort was committed in Texas satisfy the Texas long-arm statute. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005); Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). While seeking to sell a product in Texas may bring a nonresident within the state's jurisdiction,

Golsun has cited to no authority that requires a sale in Texas to satisfy the jurisdictional analysis nor have we found such authority.

Golsun next argues the evidence was legally and factually insufficient to show that alleged trade secrets were disclosed to Golsun during the Texas board meeting of the FlexKing joint venture. In making this argument, Golsun does not recognize that the Texas contacts of agents or employees are attributable to their nonresident principals. *Amec Foster Wheeler plc v. Enter. Products Operating LLC*, No. 14-18-00133-CV, 2020 WL 897376, at *6 (Tex. App.—Houston [14th Dist.] Feb. 25, 2020, no pet.); *see also Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) ("As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts."). In other words, even if FlexSteel was unable to establish that trade secrets were misappropriated in Texas, Golsun is subject to Texas jurisdiction through the acts of its agent or employee Chen, a Texas resident. *See Huynh v. Nguyen*, 180 S.W.3d 608, 620 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Although the trial court did not expressly find Chen was Golsun's agent or employee we presume the trial court impliedly found all facts necessary to support its order if supported by legally and factually sufficient evidence. *See Am. Type Culture Collection Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002); *Huynh*, 180 S.W.3d at 620. Therefore, we construe Golsun's argument that it is not subject to specific jurisdiction in Texas as an attack on the legal and factual sufficiency of the evidence to support the trial court's implied finding that Chen was acting as an agent or employee of Golsun. *See Huynh*, 180 S.W.3d at 620; *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Although Golsun did not address the issue of Chen's employment in its

opening brief, Golsun asserted in its reply brief that Chen was not its agent or employee for purposes of the jurisdictional analysis. To support its allegation that Chen was the agent or employee of Golsun FlexSteel presented the following evidence:

- Golsun's website listed Chen as Golsun's Technology Controller.
- Chen used a Golsun email address when conducting business.
- Golsun paid Chen a salary in addition to making payments to Chen's companies in Houston.

Golsun responds asserting Chen was an independent contractor, not its employee. Golsun asserts that FlexSteel failed to prove Golsun had the right to control Chen's work because only an independent contractor relationship was established. *See Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Determining employee status is a fact question unless "the material underlying facts are not in dispute and can give rise to only one reasonable conclusion," in which case the question is one of law. *Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 585 (Tex. 2005); *Steele v. Greater Houston Transp. Co.*, No. 14-18-01040-CV, 2020 WL 2832033, at *4 (Tex. App.—Houston [14th Dist.] May 28, 2020, no pet. h.) (mem. op.). The primary concern when evaluating whether one is an independent contractor or an employee is the degree of control the general contractor maintains. *See Limestone Prod. Dist., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) ("The test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work.").

Courts measure the right to control by considering factors such as: (1) the

11

independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except as to final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. *Limestone Prod.*, 71 S.W.3d at 312. All five factors need not be present to support a finding of control. *Thompson v. Travelers Indem. Co. of R.I.*, 789 S.W.2d 277, 278 (Tex. 1990).

### A. Independent nature of Chen's business and Golsun's right to control Chen's progress.

We address the first and third factors together because they both concern who has the right to control Chen's work. *See Steele*, 2020 WL 2832033 at *4.

The record does not contain a contract between Golsun and Chen individually, but does contain a contract between Golsun and BW Tech, a company created and owned by Chen. In its reply brief Golsun relies on this contract as evidence that Chen was an independent contractor and Golsun did not control Chen's work. The contract is for the "Structural Design and Verification of the JLB and ZMG Series Continuous Reinforced Plastic Composite Pipe." Under the heading "Division of Labor," the contract reflects that Golsun was responsible for providing "technical requirements and relevant background information; providing technical advice, services and development funds." BW Tech was responsible for project development. Golsun maintained ownership of the property purchased with research and development funds. The contract further gave Golsun the rights and obligations to:

- find out at any time [BW Tech's] progress in research and development;
- request [BW Tech] to complete the R&D tasks and deliver the results on schedule;

12

- request [BW Tech] to appropriately use the R&D funds as agreed under the contract;

- request [BW Tech] to appropriately dispose the R&D funds according to development plan agreed under the contract;

- request [BW Tech] to provide relevant technical information and necessary technical guidance;

- request [BW Tech] to train relevant technical staff to become skilled in using the technologies under the contract; and

- conduct scheduled stage and general inspection and acceptance of work, and to accept research findings.

The contract further provided that Golsun:

> shall be the owner of all results (including patented and proprietary technology) produced and verified during the process of executing this contract, along with patent application right, patent rights and ownership of proprietary technology (including possession, use, earnings and punishment power), and under no circumstances shall [Golsun] disclose the aforesaid to any third party by any means without the written consent by [Chen.]

Golsun argues this contract is evidence that it did not have control over the "means and details" of Chen's work. The trial court could have reviewed this evidence and come to the opposite conclusion. The contract provided that Golsun controlled and owned all patent rights and proprietary technology. The contract gave Golsun control to direct research and development funds and to request that those funds were appropriately disposed. These factors weigh in favor of the trial court's implied finding that Chen was Golsun's employee.

**B.  Chen's obligation to furnish necessary tools, supplies, and materials to perform the job.**

The contract required Golsun to provide funds into research and development projects and gave Chen the right to request Golsun to invest funds into research and development projects. Chen was also tasked with the obligation to accomplish the

research and development tasks and deliver the results on schedule. The contract did not obligate Chen to provide research and development funding for the patents he produced or to furnish necessary tools, supplies, and materials to perform his work. This factor weighs in favor of the trial court's finding.

## C.     Time of employment and method of payment

The record does not reflect a designated time for Chen's employment. As to method of payment, the record reflects Golsun paid Chen a salary in addition to living expenses. In Li's affidavit attached to the special appearance he admitted Chen assisted Golsun with "specific, discrete projects" and "with improvements to our bonded flexible pipe," "some other types of pipe design; and helped us secure API 17J certification, which is required to sell pipe in markets outside of China." Li averred that Golsun used Chen's company, Premiere, to market its products to Central and South America. Li sent an email to Chen explaining that Golsun would pay part of Chen's salary to Chen and part to Chen's company to permit Chen to circumvent United States income taxes. Li admitted Golsun paid Chen a "salary and his consulting fee." The Golsun accounting department advised Li on the best way to divide Chen's compensation.

FlexSteel attached a printout from Golsun's website where Golsun identified Chen as its Technology Controller. Both Li and Chen denied that Chen had been Golsun's Technology Controller, but they could not explain why Golsun's website would mistakenly list Chen as its Technology Controller and place Chen's picture next to the listing. There is no evidence that Chen was paid "by the job" or in any other manner indicating independent contractor status. The trial court could have reviewed this evidence and was within its discretion to determine Li and Chen's credibility when disputing evidence from Golsun's website. The factor of Chen's compensation weighs in favor of the finding that Chen was Golsun's employee.

Considering the above factors and viewing the evidence in the light most favorable to the trial court's ruling, we conclude the evidence was legally and factually sufficient to support the trial court's implied finding that Chen was acting as an employee of Golsun, and Chen's Texas contacts were attributable to Golsun. *See Huynh*, 180 S.W.3d at 620.

## IV. FlexSteel's claims arise out of the alleged actions of Chen as Golson's employee.

In conducting a personal-jurisdiction analysis, we review the claims in question and the evidence regarding the jurisdictional facts, but we do not determine the merits of the claims. *See TV Azteca, S.A.B. De C.V. v. Ruiz*, 490 S.W.3d 29, 35 n.1 (Tex. 2016); *Dresser-Rand Group v. Centauro Capital, S.L.U.*, 448 S.W.3d 577, 584 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Ultimate liability in tort is not a jurisdictional fact, and the merits of FlexSteel's claims are not at issue in determining whether the trial court erred in denying Golsun's special appearance. *See Amec Foster Wheeler*, 2020 WL 897376, at *8. Thus, though we describe the substance of FlexSteel's claims for the purposes of our personal-jurisdiction analysis, we do not adjudicate these claims or weigh their merit. *See id.*

Without commenting on the merits of FlexSteel's claims, we note that FlexSteel bases its claims for misappropriation of trade secrets, breach of contract, tortious interference with a contract, breach of fiduciary duty, and inducement or participating in the breach on Chen's alleged violation of his confidential or contractual relationship with FlexSteel.

In resolving the personal-jurisdiction issues in this appeal, we are not to determine the validity of FlexSteel's various allegations as to the merits. *See id*. Instead, we are to focus on the relationship among Golsun and the litigation and determine whether a substantial connection exists between Golsun's purposeful

15

contacts with Texas and the operative facts of the litigation. *See Moki Mac River Expeditions*, 221 S.W.3d at 585. Regardless of the merits, FlexSteel's claims arise from, relate to, and have a substantial connection with the words and actions of Chen in Texas during the relevant time. Because the evidence is legally and factually sufficient to support the trial court's finding that Chen was acting as an employee of Golsun, Chen's Texas contacts are attributable to Golsun. *See Huynh*, 180 S.W.3d at 620.

To reach this conclusion we need not and do not address whether the evidence is legally and factually sufficient to support the trial court's implied finding that trade secrets were allegedly misappropriated at a board meeting in Texas. *See Amec Foster Wheeler*, 2020 WL 897376, at *9. We overrule Golsun's second issue.

## V. The exercise of personal jurisdiction over Golsun comports with traditional notions of fair play and substantial justice.

In its third issue Golsun asserts the exercise of personal jurisdiction over Golsun would not comport with traditional notions of fair play and substantial justice. After a court finds the minimum contacts necessary to exercise personal jurisdiction over a nonresident defendant, federal due process requires the court to determine whether the exercise of that jurisdiction comports with traditional notions of fair play and substantial justice. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). In making this inquiry, we consider, when appropriate, (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *Id*. at 231; *Amec Foster Wheeler*, 2020 WL 897376, at *9. When the defendant is a resident of

16

another nation, we also must consider (a) the unique burdens placed on the defendant who must defend itself in a foreign legal system, (b) the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by a state court, and (c) the federal government's interest in its foreign-relations policies. *Guardian Royal Exch.*, 815 S.W.2d at 229. Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant purposefully has established minimum contacts with the forum state. *Id*. at 231. Golsun must present a compelling case that the presence of some other considerations would render the exercise of personal jurisdiction unreasonable. *See id*.

Golsun asserts it would be "an enormous burden" to require Golsun to litigate in a foreign state in a foreign language. As "evidence" of such a burden Golsun cites its special appearance in the record and notes that Li gave his deposition through an interpreter. The record reflects, however, that Li has traveled to Texas to conduct business multiple times. Not only has the supreme court held that distance alone cannot ordinarily defeat jurisdiction, *Moncrief*, 414 S.W.3d at 155, this court has held that modern transportation and communication have made it much less burdensome for a party to defend itself in a country in which it engages in economic activity. *Amec Foster Wheeler*, 2020 WL 897376, at *9 (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879 (Tex. 2010)). The burden on Golsun of litigating in Texas is not so severe as to defeat the ability of Texas courts to exercise personal jurisdiction over Golsun in this case. *See Moncrief*, 414 S.W.3d at 149.

Second, Texas has an interest in resolving this dispute because it involves the alleged commission of torts in Texas. Texas has a substantial interest in protecting its citizens against harm from the torts alleged in this litigation. *See Silbaugh v. Ramirez*, 126 S.W.3d 88, 96 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (finding

17

exercise of jurisdiction comported with fair play and substantial justice because Texas has an interest in ensuring that its citizens are protected from breach of contract and tortious acts committed by nonresidents conducting business in Texas).

Golsun does not address any other factors or cite to evidence in the record in support of its position. We hold the trial court's exercise of jurisdiction over Golsun does not offend traditional notions of fair play and substantial justice and overrule Golsun's third issue.

## CONCLUSION

We affirm the trial court's denial of Golsun's special appearance.


/s/    Jerry Zimmerer
        Justice


Panel consists of Justices Zimmerer, Spain, and Hassan.